STATE OF NORTH CAROLINA v. JOHNNY BLUE McKENZIE

No. 7620SC18

(Filed 2 June 1976)

1. **Automobiles § 113— striking bicyclist — involuntary manslaughter**
    The State's evidence was sufficient for the jury on the issue of defendant's guilt of involuntary manslaughter in the death of a bicyclist where it would support inferences that defendant was operating his automobile while under the influence of an intoxicating beverage in violation of G.S. 20-138, that he was operating his automobile at an excessive and unlawful rate of speed in a careless and heedless manner without due caution and circumspection in violation of G.S. 20-140, and that the violation of those statutes was one of the proximate causes of the collision between the automobile operated by defendant and the bicycle ridden by deceased.

2. **Automobiles § 114— acquittal of driving under influence — manslaughter prosecution based on driving under influence**
    Although defendant was acquitted in the district court of the offense of driving under the influence in violation of G.S. 20-138(a)

and was convicted only of the lesser offense of operating a motor vehicle with a blood alcohol content of .10 percent in violation of G.S. 20-138(b), the trial court in a prosecution for involuntary manslaughter arising out of the same occurrence did not err in instructing the jury that a violation of G.S. 20-138(a) could be a basis for a jury finding of defendant's guilt of involuntary manslaughter where there was evidence in the manslaughter trial that defendant was operating his vehicle at the time of the collision with deceased while he was under the influence of intoxicants.

Judge CLARK dissenting.

APPEAL by defendant from *Rousseau, Judge.* Judgment entered 5 November 1975 in Superior Court, MOORE County. Heard in the Court of Appeals 15 April 1975.

The defendant, Johnny Blue McKenzie, was charged in a bill of indictment, proper in form, with involuntary manslaughter in the death of John Robert Chriscoe, Jr., arising out of an automobile accident on 11 July 1975. He was also charged in a warrant, proper in form, with operating a motor vehicle on the public highway while under the influence of intoxicating liquor, a violation of G.S. 20-138(a). However, in the district court, he was found guilty of operating a motor vehicle with a blood alcohol content of .10 percent, a violation of G.S. 20-138(b). He appealed the latter case to the superior court. In the superior court, he pleaded not guilty, both to the charge of involuntary manslaughter and to the charge of operating a motor vehicle with a blood alcohol content of .10 percent. The jury found him guilty of both charges. From judgment imposing a prison sentence of three to five years, defendant appealed.

*Attorney General Edmisten by Associate Attorney Jesse C. Brake for the State.*

*Dock G. Smith, Jr., for defendant appellant.*

HEDRICK, Judge.

The defendant assigns as error the denial of his motions for judgment as of nonsuit as to the charge of involuntary manslaughter. Evidence for the State tends to show the following:

The defendant was driving north along State Road No. 1209 at about 9:45 p.m., 11 July 1975, when he struck and killed the deceased who had been riding his bicycle, also going north, on the right side of the road. The road approaching from the

south curves uphill and then is straight for one-tenth of a mile to the point where the accident occurred. It is a two-lane paved road, 19 feet in width, with a 13-foot shoulder. The night was clear, but the road was unlighted.

Lloyd Chriscoe, whose home fronts State Road 1209 where the accident occurred, testified that he heard the accident. He went outside where he found the body of the deceased, his nephew, just on the pavement on the left-hand side of the road. The defendant's car was stopped 500 to 580 feet north of the body.

Patrolman J. W. Smith investigated the accident. He testified that the right front headlight and windshield were broken on defendant's car. Glass and debris were on the highway near the Lloyd Chriscoe home. Bloodstains were on the highway 231 feet north of the Lloyd Chriscoe home, and the bicycle was 562 feet north of the Chriscoe home. There were 66 feet of skid marks and then "gouge marks" the remainder of the distance on the highway to the point where the bicycle allegedly came to rest. The marks indicated a pattern of travel from right to left across the highway and then back across to the right.

Wanda Ritter testified that she was in the Chriscoe home sitting in the living room when she saw the deceased pass by on his bicycle. She saw the rear reflector on the bicycle and car lights shining on the back of the bicycle. About fifteen seconds later, she "heard a noise and saw sparks going up and down the road."

At the scene, the defendant told Patrolman Smith that he had been in Pinehurst and had consumed four or five beers. The defendant said he had not seen the deceased on his bicycle because "he was meeting two vehicles at the time and the headlights on these two vehicles had his attention." The defendant stated that when he hit the deceased "he was traveling not more than 5 to 10 miles of the speed limit."

When Smith arrived at the scene, the defendant was leaning against his vehicle and had an odor of alcohol on his breath. In Smith's opinion, the defendant was "under the influence of intoxicating liquor when first observed" on the highway. When Lloyd Chriscoe observed the defendant at the scene, he noticed also that the defendant was unsteady on his feet and had alcohol on his breath.

The defendant voluntarily took the breathalyzer test, the result showing .10 percent blood alcohol. Trooper Myron Gay, who administered the test, noticed the defendant was unsteady on his feet and crying and in his opinion was under the influence of alcohol.

Defendant offered the testimony of three witnesses who observed him at the accident, at the hospital, and later at the jail on the night of 11 July. All three described the defendant as being steady on his feet and talking clearly. They described him as being emotionally upset by the accident, but they could understand everything that he said to them.

Stacy Ritter, one of the three witnesses, said he talked with the defendant at the scene. The defendant told him that he did not see the bicycle until he passed the two approaching vehicles. "[H]e saw a speck and whipped his car to the left, but just couldn't miss whatever it was."

The defendant also testified. He said he was traveling about 55 to 56 m.p.h. at the time and because of the headlights from the approaching cars did not see deceased until he was only "4, 5, or 6 feet" from him. While he admitted consuming four beers earlier in the evening, he denied that they had affected the way he walked, talked, or drove.

[1]　By the defendant, we are cited to *State v. Tingen*, 247 N.C. 384, 100 S.E. 2d 874 (1957), in support of his contention that the evidence here falls short of raising an inference that defendant's culpable negligence in the operation of his automobile caused the death of John Chriscoe. We do not agree. In our opinion, *Tingen* is distinguishable. There, although the defendant was operating his automobile while under the influence of intoxicating beverage, the court held that the evidence was not sufficient to raise an inference that defendant's driving under the influence was one of the proximate causes of the collision between defendant's automobile and the deceased. In the present case, the evidence is not only sufficient to raise inference that the defendant was operating his automobile while under the influence of an intoxicating beverage in violation of G.S. 20-138, and that he was operating his automobile at an excessive speed and an unlawful rate of speed in a careless and heedless manner without due caution and circumspection, in violation of G.S. 20-140, it is also sufficient to raise an inference that the violation of these statutes was one of the proximate causes of the

collision between the automobile operated by the defendant and the bicycle deceased was riding. This assignment of error is not sustained.

[2]    Defendant next contends the court erred in its instructions to the jury with respect to the charge of involuntary manslaughter. Defendant argues that since he had been acquitted of the charge of driving under the influence and since there was no evidence offered at his trial in the superior court that he was driving while under the influence of an intoxicating beverage, the court erred in instructing the jury that a violation of G.S. 20-138 (a) could be a basis of the jury's finding the defendant guilty of involuntary manslaughter. We do not agree. Suffice it to say, the record of defendant's trial in the superior court is replete with evidence tending to show that the defendant was under the influence of an intoxicating beverage when the automobile he was driving struck the bicycle operated by the deceased.

In our opinion, the acquittal of the defendant in the district court of the offense of driving under the influence in violation of G.S. 20-138 (a) did not preclude the prosecution of the defendant of involuntary manslaughter for a death arising out of the same occurrence. *State v. Sawyer,* 11 N.C. App. 81, 180 S.E. 2d 387 (1971) ; *State v. Mundy,* 243 N.C. 149, 90 S.E. 2d 312 (1955) ; *State v. Midgette,* 214 N.C. 107, 198 S.E. 613 (1938). Thus, we hold that the court did not err in instructing with respect to the defendant's violation of G.S. 20-138 (a) where there was evidence at trial on the manslaughter charge that the defendant was operating the motor vehicle at the time of the collision with the deceased while he was under the influence of an intoxicating beverage. This exception is not sustained.

We have carefully examined defendant's other exceptions and find them to be without merit. We hold the defendant had a fair trial free from prejudicial error as to the charges of involuntary manslaughter and operating a motor vehicle with a blood alcohol content of .10 percent.

No error.

Chief Judge BROCK concurs.

Judge CLARK dissenting.

I agree that the acquittal of the defendant in the District Court on the charge of violating G.S. 20-138(a) did not preclude his prosecution on the charge of involuntary manslaughter which arose out of the same transaction.

But I do not agree that in the trial on the charge of involuntary manslaughter the court could then use the violation of G.S. 20-138(a) as the basis for the conviction of the defendant of involuntary manslaughter and to so instruct the jury. This is contrary to the basic principle underlying double jeopardy, res judicata, and collateral estoppel.

In State v. Heitter, (Del. Sup. 1964), 203 A. 2d, 69, 9 A.L.R. 3d 195, the court held that the defendant's acquittal by a justice of the peace of two statutory misdemeanors of reckless driving and driving while intoxicated was res judicata to a prosecution for manslaughter by a motor vehicle arising out of the same transaction as the two statutory misdemeanors, but that a manslaughter prosecution under the counts of the indictment charging the defendant with driving at an excessive and unsafe speed was not barred under the constitutional prohibition of double jeopardy.

In the present case it is my opinion that the court could have properly used the violation of G.S. 20-138(b) or other statutes as the basis for conviction of involuntary manslaughter, but not G.S. 20-138(a) for which he was acquitted.