## STATE v. SAM ELLISON.

(Filed 30 October, 1946.)

**1. Homicide §§ 16, 19—**

Where defendant enters a plea of not guilty and does not change this plea or make formal plea of self-defense, defendant's testimony that he shot deceased does not constitute an admission or testimony that he inflicted fatal injury, nor will defendant's negative reply to a question asked on cross-examination as to what occurred after defendant "killed" deceased, amount to such an admission, and the burden rests upon the State to prove that fatal injury was inflicted by the deadly weapon in defendant's hands before the State is entitled to the presumption of malice.

**2. Homicide § 27b: Criminal Law §§ 53f, 81c (2)—Where misstatement of admissions affects burden of proof, charge must be held for prejudicial error.**

Where defendant testifies that he intentionally shot deceased but does not admit that he inflicted fatal injury, a charge that defendant admitted the intentional killing of deceased with a deadly weapon, raising the presumption of malice constituting the offense of murder in the second degree and placing the burden on the defendant to prove matters in mitigation or excuse, must be held for prejudicial error since it affects the burden of proof, notwithstanding plenary evidence on the part of the State tending to show that the injuries inflicted by defendant were fatal, the credibility of the State's evidence being for the jury and the court being prohibited from expressing an opinion thereon. G. S., 1-180.

**3. Homicide § 19: Criminal Law § 34c—**

The fact that counsel for defendant in arguing the case to the jury admitted that defendant had killed deceased with a deadly weapon is not such an admission on the part of the defendant as will relieve the State of proving that essential fact.

APPEAL by defendant from *Phillips, J.,* at April Term, 1946, of WATAUGA. New trial.

The defendant was convicted of murder in the second degree for the felonious slaying of one Howard Hockaday.

The pertinent evidence produced at the trial may be summarized as follows:

The defendant and deceased had for several years lived within a few hundred yards of each other in a small mountain community in Watauga County. A road separated their respective premises. About 6:00 p.m., 15 October, 1945, the defendant shot the deceased three times with a shotgun. The State offered evidence tending to show that as result of wounds thus inflicted the deceased shortly thereafter died. About one hundred shot struck the chest and back of deceased. At the time of the shooting defendant, according to his own testimony, was standing on the porch of his home, 5 or 6 feet from the road, or in the road according to

the State's evidence. The deceased was standing on his own land across the road, at a distance of 94 feet according to defendant's testimony, or 65 feet according to the State. It appeared that shortly before the shooting the deceased had left his home carrying a loaded rifle and had gone to the place where he was shot, in front of defendant's home, for the purpose of warning defendant to keep his hogs off his land. Defendant testified deceased had threatened his life, had shot at him twice, had earlier that afternoon gone to his home, inquired for him, and left word with defendant's wife that he would get him when he came home. Soon after defendant came home from his work deceased appeared across the road armed with a rifle. Defendant further testified that deceased called to him to come out, using insulting language, and that as he stepped to the door he picked up his automatic shotgun, and as soon as deceased saw him he raised his rifle as if to shoot, and defendant shot three times as fast as he could. According to the State's evidence the deceased turned and ran, and fell 29 feet from the place where he received the first shot, and died a short time thereafter. At the point where deceased was struck by the shot his rifle was dropped or thrown down and was found with the barrel sticking up in the ground. There was no expert testimony as to cause of death. The defendant further testified that immediately after the shooting a State's witness approached him and asked if deceased was killed, and defendant said he did not know. Defendant then left and gave himself up to the officers.

During the defendant's cross-examination he was questioned about the rifle sticking up in the ground and as to when and by whom this was done. He replied that he did not know whether he saw the rifle sticking up or not. "I don't know whether he (the deceased) stuck it there or not. I do not mean to say after I killed him he stuck the rifle up in the ground. If he did not stick the rifle up in the ground before I fired the last shot I suppose it was after he fell. I don't know after I shot him whether he stuck the rifle in the ground 29 feet away from where he fell. I don't know how far I would say he was from the rifle when he fell. . . . He fell once with the rifle. Main (a State's witness) said he stuck the rifle in the ground and kept going."

The defendant noted exception to the following portion of the court's charge to the jury: "Now, gentlemen of the jury, the defendant in this case has interposed a plea of self-defense. He admitted the killing with a deadly weapon, both while upon the stand testifying in his own behalf and through his counsel when they argued the case to you in his behalf. He admits that he killed the deceased with a deadly weapon, to wit, a shotgun. Now when this is done, there are certain legal principles which you must consider when arriving at your verdict. . . . And the burden then rests upon the defendant to show not by the preponderance of the evidence, and not beyond a reasonable doubt, but simply to the satisfac-

tion of the jury such facts and circumstances as will reduce or mitigate the offense from murder in the second degree to manslaughter or excuse it altogether, and this he must do upon evidence introduced in his own behalf and all the evidence in the case."

The jury returned verdict of guilty of murder in the second degree, and from judgment imposing prison sentence, the defendant appealed.

*Attorney-General McMullan and Assistant Attorneys-General Bruton, Rhodes, and Moody for the State.*

*Trivette & Holshouser and Lovill & Zimmerman for defendant.*

DEVIN, J. The principal assignment of error brought forward in defendant's appeal relates to the judge's charge to the jury. The instruction of which he complains was bottomed upon the view that the defendant had admitted that he killed the deceased with a deadly weapon. The judge so stated to the jury, and instructed them to consider the case from the standpoint of such admission as constituting a predetermined fact. If the court correctly interpreted the testimony of the defendant, the exception is without merit.

The defendant testified on the stand that he fired three shots with a shotgun loaded with No. 8 shot at the deceased at a distance of 94 feet, and that the deceased fell 29 feet from the place where shot, but we do not find in the record any formal admission or testimony from the defendant that the shots he fired caused the death of the deceased.

The able trial judge was doubtless influenced in his view by the expression on the part of the defendant appearing in the record: "I do not mean to say after I killed him he stuck the rifle up in the ground." But this was on cross-examination and evidently in response to questions as to the circumstance and cause of the rifle of deceased being stuck up in the ground, and apparently the word "killed" was derived from the language of the questioner and incorporated in the statement of the witness in the process of reducing the cross-examination to narrative form for the record. Also the statement quoted was negative in form and indicated a negative response to the question whether he meant the deceased had stuck the rifle in the ground after he was killed. The defendant had, when arraigned, pleaded not guilty. So far as the record shows he did not change that plea or interpose formal plea of self-defense.

From an examination of the record we reach the conclusion that the trial judge misinterpreted the testimony of the defendant and was in error in stating to the jury that the defendant had admitted that he killed the deceased with a deadly weapon, to wit, a shotgun.

If so, it necessarily follows there was prejudicial error in the instruction to the jury based on that view. In *S. v. Redman,* 217 N. C., 483,

8 S. E. (2d), 623, where a similar question was raised, it was said: "The error is harmful, therefore, for the reason that the court, acting under the misapprehension that the killing was admitted, failed to instruct the jury properly in respect to the burden of proof."

The statement by the trial judge that the defendant had admitted that he had killed the deceased with a deadly weapon dispensed with proof of that material fact and infringed upon the exclusive province of the jury. *S. v. Maxwell,* 215 N. C., 32, 1 S. E. (2d), 125. While the evidence offered by the State would seem very strongly to support the view that the shots fired by the defendant caused the death of the deceased, but in the absence of an admission by the defendant, that was a fact for the jury to find. The credibility of the witnesses, the weight to be given their testimony, the conclusion to be drawn therefrom were matters exclusively for the jury. Notwithstanding the apparent strength of the State's evidence, the jury had the power not to accept it as sufficient proof. Since the early days of statehood the principle has been imbedded in our jurisprudence that the trial court shall not give an opinion to the jury whether a fact has been sufficiently proven, "that being the true office and province of the jury." G. S., 1-180; Laws 1796, chapter 452; *S. v. Blue,* 219 N. C., 612, 14 S. E. (2d), 635.

In the absence of an admission to that effect the burden of proof was upon the State to show from the evidence beyond a reasonable doubt that the shots admittedly fired by defendant caused the death of the deceased. As was observed by *Justice Barnhill* in writing the opinion in *S. v. Redman, supra:* "While there is sufficient evidence in the record to sustain a finding by the jury that defendant killed the deceased with a deadly weapon, the jury has not been permitted to weigh and consider this evidence under instructions that the burden of so showing rested upon the State."

The instruction to the jury that the defendant had admitted he intentionally killed the deceased with a deadly weapon, relieved the State of the necessity of proving that fact. This imposed upon the defendant the burden of showing mitigation or self-defense without requiring the State, as a prerequisite, to prove beyond a reasonable doubt the intentional killing by defendant of the deceased with a deadly weapon.

While the admission or proof of an intentional killing of a human being with a deadly weapon raises presumptions against the slayer that the killing is both unlawful and done with malice, in the absence of an admission by the defendant that he killed the deceased, the intermediate steps necessary to invoke the aid of these legal presumptions must first be taken by the State. *S. v. DeGraffenreid,* 223 N. C., 461, 27 S. E. (2d), 130; *S. v. Gregory,* 203 N. C., 528, 166 S. E., 387.

The fact that counsel for defendant in arguing the case to the jury admitted he had killed the deceased with a deadly weapon may not be

regarded as such an admission on the part of the defendant as would relieve the State of proving that essential fact. *S. v. Baker,* 222 N. C., 428, 23 S. E. (2d), 340; *S. v. Redman, supra.*

We conclude that the defendant's exception to the court's instruction to the jury, for the reasons herein stated, must be sustained, and a new trial awarded.

New trial.