STATE v. FRED ADAMS.

(Filed 2 March, 1955.)

**1. Homicide § 5—**

Murder in the second degree is the unlawful killing of a human being with malice, and the burden is on the State to satisfy the jury from the evidence beyond a reasonable doubt of the presence of each essential element of the offense.

**2. Homicide § 16—**

When the State satisfies the jury from the evidence beyond a reasonable doubt that the defendant intentionally shot the deceased and thereby proximately caused his death, there arise the presumptions that the killing was (1) unlawful and (2) with malice.

**3. Homicide § 27b—**

Where defendant does not admit that he intentionally shot deceased, but contends that he was drunk and had no knowledge of firing the fatal shot and had no malice toward his victim, an instruction to find defendant guilty of murder in the second degree if the jury should find from the admission of defendant that he shot and killed deceased with malice, but without premeditation and deliberation, and that malice is implied from the use of a deadly weapon, must be held for prejudicial error.

APPEAL by defendant from *Johnston, J.,* November, 1954, Term of CHEROKEE.

The defendant was indicted and tried for the murder of Luther Carringer. The jury's verdict was: "Guilty of Murder in the First Degree with the recommendation that the prisoner, Fred Adams, be given life imprisonment." The court, in compliance with G.S. 14-17, pronounced judgment that the defendant be imprisoned for life in the State's Prison. Defendant appealed, assigning errors.

In brief, the State's evidence tended to show these facts:

Carringer and Adams were neighbors. They lived on opposite sides of the public road, the houses facing each other and being 300-400 feet apart. There had been no quarrel or difficulty between these men before the day of the homicide.

On Monday, 6 September, 1954, Roy Hogan was walking along the right side of the public road towards Carringer's house. Hogan is a nephew of Mrs. Carringer. Adams, driving an automobile, overtook and passed Hogan; and about 100 yards farther Adams turned from the road and went up into his yard.

When Hogan reached the point in the road between the two houses, he called and accused Adams of having tried to run over him. They quarreled fifteen minutes or more. Adams was on an eight foot bank, in front of his house, seated on a box. Hogan was standing in the public road. They were about ten feet apart. Taunts, dares and threats were exchanged. Finally, Adams said, "Roy, I will get my gun and fix you." Adams then left and went to his house. Hogan left the road and walked "angling" into Carringer's yard. While these events were taking place, Carringer was sitting in a chair, in his own yard, near the end of the porch, about 35 steps back from the public road.

Shortly thereafter, Adams came back through the front door of his house with his rifle. Thereupon, Carringer got up, walked towards the road and called, "Fred, don't point the gun towards the house"; and Mrs. Carringer called, "Fred, don't shoot down this way." (Hogan was then walking towards the end of the porch.) Adams called back to Carringer, "I will shoot you." After this Carringer turned, made a step or two; and then Adams fired the shot that killed Carringer. Hogan and Carringer were two or three yards apart when the rifle fired. Adams was accustomed to use a rifle when hunting.

Defendant's testimony tended to show that he had no recollection of what occurred after he left the quarrel with Hogan near the road; and that he did not remember getting the rifle, or any incidents involving Carringer or the firing of the rifle. There was evidence, including defendant's testimony, that defendant had been drinking heavily, was drunk, and did not know what he was doing at the time Carringer was shot.

The court restricted the jury to one of four possible verdicts, namely, (1) guilty of murder in the first degree, (2) guilty of murder in the first degree with recommendation that the punishment be life imprisonment, (3) guilty of murder in the second degree, (4) not guilty.

The presiding judge, in his final instructions to the jury, after giving instructions bearing upon first degree murder, concluded: "If you find from the evidence beyond a reasonable doubt, *or find from the admission of the prisoner* that he shot and killed Luther Carringer with malice, but without premeditation and deliberation, and malice is implied by the use of a deadly weapon, then and in that event it would. be your duty to return a verdict of guilty of second degree murder. If you fail to so find, then you would return a verdict of not guilty. Or if upon a fair and impartial consideration of all the evidence in the case you have a reasonable doubt of his guilt, then and in that event you would give him the benefit of the doubt, and return a verdict of not guilty." (Italics added.)

This excerpt from the charge is made the basis of an exceptive assignment of error.

*Attorney-General McMullan and Assistant Attorney-General Love for the State.*

*O. L. Anderson for defendant, appellant.*

BOBBITT, J.    Both in first degree murder and in second degree murder, there must be an unlawful killing with malice. The State must satisfy the jury from the evidence beyond a reasonable doubt of the presence of these indispensable elements. To convict of first degree murder the State must also satisfy the jury from the evidence beyond a reasonable doubt that the killing was "willful, deliberate and premeditated." G.S. 14-17.

When the State satisfies the jury from the evidence beyond a reasonable doubt that the defendant intentionally shot the deceased and thereby proximately caused his death, there arise the presumptions that the killing was (1) unlawful and (2) with malice. *S. v. Gordon, ante,* 356.

The quoted instruction includes the statement that the jury may "find *from the admission of the prisoner* that he shot and killed Luther Carringer with malice." (Italics added.)

We have searched the record in vain to find any judicial admission either by defendant or by counsel in his behalf. Nor does the record disclose testimony of defendant to the effect that he shot and killed Carringer with malice. Indeed, defendant's testimony tended to show that he had no knowledge of having fired the rifle; and further, that he had no malice towards Carringer and had no intention to shoot him. Thus, we find no basis in the record for the instruction to the jury stating, in effect,

that the defendant had made an admission that he had shot and killed Carringer with malice.

The reference to such admission of the defendant, while an inadvertence, must be regarded as prejudicial to defendant on a critical feature of the case. Compare *S. v. Redman,* 217 N.C. 483, 8 S.E. 2d 623; *S. v. Ellison,* 226 N.C. 628, 39 S.E. 2d 824; *S. v. Simmons,* 236 N.C. 340, 72 S.E. 2d 743; *S. v. Ham,* 238 N.C. 94, 76 S.E. 2d 346.

For the error stated, there must be a new trial. Hence, other assignments of error, which involve questions which may not arise upon such new trial, need not be discussed.

New trial.