**David L. MILLS, Petitioner,**

v.

**H. B. SHEPHERD et al., Respondents.**

**No. C–C–77–49.**

United States District Court,
W. D. North Carolina,
Charlotte Division.

Feb. 14, 1978.

Allan W. Singer, Weinstein, Sturges, Odom, Bigger & Jonas, P.A., Charlotte, N.C., for petitioner.

Richard N. League, Asst. Atty. Gen., North Carolina Dept. of Justice, Raleigh, N.C., for respondents.

## JUDGMENT

McMILLAN, District Judge.

David L. Mills, a prisoner of the State of North Carolina, was tried for second degree murder, was convicted of voluntary manslaughter, and was sentenced to twenty years in prison at the March 13, 1975, session of the Mecklenburg County Superior Court. He petitions for a writ of habeas corpus on the grounds that (1) he was denied the right to a speedy trial; (2) his trial counsel failed to demand a speedy trial and was thus inadequate in representing him; (3) his motion at trial for nonsuit was improperly overruled; (4) the trial judge failed to charge on the issue of self-defense; (5) the trial judge wrongly charged on the issue of malice; and (6) he was denied counsel and the right to a hearing on his post-conviction petition.

Respondents have answered and moved to dismiss and have submitted the record, including a trial transcript, of the state criminal proceedings. The petitioner's claims raised several substantial questions and counsel was appointed to represent him. On January 4, 1977, the motion to dismiss was considered at a hearing in which both parties were represented by counsel. At that time the court indicated that the petition would probably be dismissed, and petitioner's attorneys orally requested a certificate of probable cause to appeal.

Petitioner, then aged seventeen or eighteen years, was arrested on July 18, 1973, in connection with the apparent homicide of Billy Francis Brinkley on the night of July 13, 1973. Mr. John J. Plumides appeared as counsel for petitioner as early as July 24, 1973; upon petitioner's affidavit of indigency filed October 3, 1973, Plumides was appointed by the court to represent him. Petitioner was indicted for murder on December 3, 1973. On March 19, 1974, someone in the Mecklenburg County Sheriff's office informed the District Attorney that petitioner had been transferred from the Mecklenburg County Jail to the Department of Correction to begin serving consecutive sentences of two years and four to five years imposed on previous convictions, and suggested that a detainer be filed with the Department of Correction.

Petitioner was brought to trial on a charge of second degree murder, on March 10, 1975, twenty months after his arrest and twelve months after he began serving time on his previous sentences. The only explanation for the state's delay is found in respondents' answer: "It is a matter of record that petitioner was serving another sentence in state prison during the time of the delay. Accordingly, the inference arises by virtue of the delay that he hoped to lay low and not be tried at all, and that the state was similarly in no hurry by virtue of the fact that he was already incarcerated." For his part, petitioner says that it was his trial counsel's responsibility to demand a speedy trial. Petitioner contends he was prejudiced by the delay because of the de-

tainer's effect on his custody level and his parole chances, the lost opportunity for concurrent sentencing, and the fact that he lived for twenty months with the thought of facing public charges which caused him to "associate with hardened criminals and among other things, to participate in unpopular causes such as his escape."

Petitioner did not testify in his own defense and did not offer nor elicit any evidence except by cross-examination.

The physical and background evidence for the prosecution showed that on July 14, 1973, around mid-day, the body of Billy Francis Brinkley, deceased, was found in a few feet of water at Paw Creek Cove in Mecklenburg County. Brinkley was about forty-three years of age, was five feet six inches or so in height, weighed between 130 and 150 pounds, was a hair dresser and cosmetic salesman, and was not married. He owned a Mustang automobile. His death was the result of head injuries and a massive crushing injury to his chest caused by blunt forced trauma and consistent with his having been kicked. No weapon was found. Human hair was found on the boots that petitioner wore and blood was found on the blue jeans that petitioner wore on the night of July 13, 1973. On cross-examination a state's witness testified that the head injuries required a blow of great force and were consistent with a fall upon rocks such as were situated in the area where the body was found, and that drowning could have been a contributing cause of death. The cove is an arm of a lake on the Catawba River and the level of the lake rises and falls several feet from time to time due to the operation of the dam at a nearby power plant. Brinkley's Mustang automobile and some jewelry which petitioner admitted taking from Brinkley were in the possession of petitioner a few hours following the apparent time of Brinkley's death.

The principal oral testimony connecting petitioner with the crime came from two men with whom petitioner was rooming at the time. These roommates were Edward Black and James E. Pate. Pate was at home on the night of July 13, 1973, when petitioner returned an hour or two after

midnight. At that time petitioner had Brinkley's automobile in his possession and he displayed Brinkley's ring and a watch and a bracelet (which were produced at the trial), and told Pate that he had "rolled a queer." Petitioner, according to Pate, said that he had met Brinkley in a bar, that Brinkley had offered him money (twenty dollars) to commit a homosexual act; that they drove out to Paw Creek Cove in Brinkley's automobile; that Brinkley grabbed his privates and made a "pass" at him; that Brinkley did not have as much money as he had promised; that petitioner fought him off, and that Brinkley persisted; that petitioner then became "scared," pushed Brinkley out of the car, chased him a short distance, knocked him down, kicked him, pulled his clothes down to hinder pursuit, took the jewelry from him, left him lying near the water, and drove home in Brinkley's Mustang automobile. Petitioner complained of a swollen or sprained foot.

The evidence of the roommate Black was the same in substance, though it varied slightly in detail, as to what petitioner recited to. Black about mid-afternoon on the same day, July 14, 1973.

There was evidence that petitioner, who had freely admitted to his friends that he had robbed and assaulted Brinkley, was shocked and surprised when told of Brinkley's death, that his then impulse was to go to the police, and that he cooperated with the police in finding the boots and blue jeans at his home.

Petitioner's motion for a nonsuit at the close of the evidence was denied. The court heard arguments on petitioner's request for a self-defense instruction, but did not charge the jury on that issue. The judge's instructions concerning the burden of proving malice reads as follows:

"And I charge you for you to find the defendant guilty of second degree murder, the State must prove two things beyond a reasonable doubt; first, that the defendant intentionally and with malice killed the said Billy Brinkley with a blunt object, his boot.

"If the State proves beyond a reasonable doubt that the defendant intentionally killed Billy Brinkley with a deadly weapon, or intentionally inflicted a wound upon Billy Brinkley with a deadly weapon that proximately caused his death, the law raises two presumptions:

"First, that the killing was unlawful; second, that it was done with malice. Then, nothing else appearing, the defendant would be guilty of second degree murder.

"In order, members of the jury, to reduce this crime to manslaughter, the defendant must prove not beyond a reasonable doubt, but simply to your satisfaction, that there was no malice on his part.

"To negate malice, and thereby reduce the crime to manslaughter, the defendant must satisfy you of three things; first, that he, David Mills, in kicking and beating the deceased, Billy Brinkley, that he did this in the heat of passion. . . .

"Second, that this passion was produced by acts of the deceased, Billy Brinkley, which the law regards as adequate provocation. . . .

"And, third, that the beating and kicking of the deceased, Billy Brinkley, took place so soon after provocation, passion of a person of average mind and disposition would not have cooled. . . ."

Petitioner did not object to the malice instruction.

Petitioner was convicted of voluntary manslaughter and was sentenced to twenty years in prison, to be served at the expiration of his previous sentences.

Petitioner appealed his conviction to the North Carolina Court of Appeals, asserting errors by the trial judge in overruling the motion for nonsuit and in failing to charge on self-defense. The court found no error, in an opinion reported at 28 N.C.App. 219, 220 S.E.2d 209 (1975), which reads in full as follows:

"Defendant's record on appeal was docketed on the 109th day after entry of judgment, and the 28 April 1975 order

extending time does not validly extend the time for docketing. The record fails to present documents or events in chronological order. The record contains no exceptions, nor does either of the two assignments of error refer to an exception. The appeal, therefore, can present only the face of the record for review. Because of defendant's indigency, rather than dismiss the appeal, we have considered this appeal as an exception to the judgment, presenting the face of the record for review. We have reviewed the record and find that defendant received a fair trial free from prejudicial error.

"No error."

Petitioner did not seek a writ of certiorari from the North Carolina Supreme Court.

On July 1, 1976, petitioner filed a petition for post-conviction relief in Mecklenburg County Superior Court alleging that he had been denied the right to a speedy trial and to effective assistance of counsel, and requesting an evidentiary hearing. The petition was denied without a hearing on August 10, 1976, by Judge Fred Hasty who then appointed counsel to seek a writ of certiorari from the North Carolina Court of Appeals. Counsel filed a brief with that court, but certiorari was denied on December 21, 1976.

■ Though petitioner did not seek certiorari on direct appeal, respondents' answer does not argue that petitioner has failed to exhaust state remedies on the nonsuit and instruction claims. The court concludes that respondents have waived any exhaustion defense. See *Wade v. Peyton*, 378 F.2d 50 (4th Cir. 1967); *Jenkins v. Fitzberger*, 440 F.2d 1188, 1189 n.2 (4th Cir. 1971).

### SPEEDY TRIAL

■ In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court identified four factors relevant to a claim of denial of the constitutional right to a speedy trial: the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

A twenty-month pretrial delay is long enough to trigger serious inquiry into the remaining factors but petitioner has otherwise failed to make out a case for violation of his right to a speedy trial.

There is no showing of substantial prejudice to petitioner. Petitioner did not lose the opportunity for concurrent sentencing. Though petitioner had five to six years still to serve on prior convictions, the trial judge ordered petitioner's twenty-year sentence to be served consecutively. There is no reason to believe a trial date twelve or even sixteen months sooner would have netted concurrent sentencing. The pending charges did not substantially affect petitioner's custody level and parole chances during the first year of consecutive two-year and four-to-five-year sentences. The only impact shown was the demotion from minimum custody to medium security one month before trial. Whatever mental anguish petitioner suffered as a result of the delay did not have such an impact that he sought a speedy trial and there is no evidence that he requested his attorney to seek one. A request for speedy trial is not a condition precedent to habeas relief but it is revealing as to the psychological harm petitioner felt from the delay.

Petitioner does not allege and the record does not show that the pretrial delay impaired the petitioner's defense of his case. Though one roommate testified that the delay made it impossible to remember everything petitioner said on July 14, 1973, both roommates independently recited similar statements made by the petitioner to each of them on that day in some detail and with little conflict. Neither "recalled" petitioner stating that he only kicked when Brinkley persisted in grabbing him outside the car, making it quite likely that no such statements were made rather than that they were made and forgotten.

Petitioner does not allege any malicious intent on the part of the prosecution, whose case principally depended on the memories

of its witnesses. Petitioner's counsel may have decided against demanding a speedy trial for strategic reasons. His client's case had little to lose and something to gain. Whatever the reasons, counsel is not inadequate for failing to demand a speedy trial where his client must remain in custody in any case and has expressed no desire for one.

Twenty months was too long to wait to try petitioner who may have suffered some unnecessary anguish and inconvenience. The record, however, does not show such prejudice to petitioner that he was deprived of his right to a speedy trial or was prejudiced by the delay. *See Morrison v. Jones,* 565 F.2d 272 (4th Cir. 1977), cert. denied 46 U.S.L.W. 3553 (1978).

## TRIAL ERRORS

■ *Motion for nonsuit.*—The motion for nonsuit was properly denied. Strong evidence indicated guilt, and there is no requirement that such evidence exclude every reasonable hypothesis consistent with innocence as petitioner would argue. *United States v. Chappell,* 353 F.2d 83 (4th Cir. 1965).

■ *Self-defense instruction.*—To obtain habeas relief on the ground that the trial judge improperly instructed the jury, petitioner must show that the erroneous charge "by itself so infected the entire trial that the resulting conviction violates due process," a burden especially heavy to meet where the error lay in omitting an instruction. *Henderson v. Kibbe,* 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977).

■ Until recently, the omission of a self-defense instruction, even where the evidence clearly raised the issue, did not necessarily constitute a due process violation. See, *e. g., Kearney v. Peyton,* 360 F.2d 589 (4th Cir. 1966). However, *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), as interpreted by *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), holds that the state must bear the burden of proving beyond a

reasonable doubt every fact which must be "proved or presumed" in order to constitute the crime. Both malice and unlawfulness, which include the absence of self-defense, are elements of second-degree murder in North Carolina. *State v. Foust,* 258 N.C. 453, 128 S.E.2d 889 (1963); *State v. Adams,* 241 N.C. 559, 85 S.E.2d 918 (1955). Both are presumed upon proof beyond a reasonable doubt of intentional wounding with a deadly weapon. *State v. Jones,* 287 N.C. 84, 214 S.E.2d 24 (1975). *Mullaney* applies retroactively to petitioner's case. *Hankerson v. North Carolina,* 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977). However, the Supreme Court also held in *Hankerson* that *Mullaney* does not require a self-defense instruction unless the criminal defendant presents at least some evidence of heat-of-passion or self-defense. 432 U.S. at 237 n.3, 97 S.Ct. 2339.

■ Omission of any instruction on an issue the prosecution must prove beyond a reasonable doubt heavily implicates a due process violation where there is some evidence to support a factual dispute. In the knowledge that the "some evidence" tripwire now determines whether the omission of a self-defense instruction comports with due process, the court believes that petitioner's evidence did not trip the wire.

■ In North Carolina, self-defense is established where the slayer is free from blame in the altercation, was the victim of a felonious assault or "retreated to the wall" from a non-felonious attack, and used only that force which reasonably appeared necessary to him to protect himself from death or great bodily harm. "Where there is evidence that defendant acted in self-defense, the court must charge on this aspect even though there is contradictory evidence by the State or discrepancies in defendant's evidence." *State v. Dooley,* 285 N.C. 158, 163, 203 S.E.2d 815, 818 (1974).

■ Even ignoring the discrepancies in the evidence brought out on cross-examination, there was *no* evidence that defendant was free from fault in bringing on the

encounter, that petitioner reasonably or otherwise feared death or great bodily harm, that petitioner was the victim of a felonious assault, or that petitioner could not have retreated at any time during the encounter. Uncontradicted evidence showed that petitioner went to Paw Creek Cove knowing the intentions of his companion, that in response to sexual advances petitioner became upset, and that rather than leave the car or the area petitioner pushed Brinkley out of Brinkley's car and without further provocation beat and kicked him. Petitioner was not entitled to an instruction on the issue of self-defense.

On the other hand the North Carolina Supreme Court has reversed for failure to instruct on self-defense when the evidence of the defense was fairly minimal. *State v. Deck*, 285 N.C. 209, 203 S.E.2d 830 (1974). Although that case does not affect this decision, the change in the state's burden of proof since *Deck* does raise substantial questions that warrant the grant of a certificate of probable cause to appeal from the denial of the writ.

 *Malice instruction.*—The trial judge charged the jury that petitioner bore the burden of satisfying them as to heat of passion. The jury determined that petitioner had met that burden, convicting him of manslaughter and not second-degree murder. Under *Mullaney* and *Patterson*, the instruction is constitutional error, and under *Hankerson v. North Carolina*, petitioner is entitled to the benefit of those decisions. Petitioner did not object to the instruction, but North Carolina does not require an exception at trial to preserve the issue for appeal. *State v. Lambe*, 232 N.C. 570, 61 S.E.2d 608 (1950).

The question arises whether the error became harmless upon the jury's verdict. Errors of constitutional dimension are not harmless unless the court "is able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). The uncontradicted evidence shows that petitioner kicked the deceased and left

him by the water where he was found dead of head injuries and a massive crushed chest. Petitioner's main defense was that he kicked in passion and not in a way that could kill. The jury believed the former despite the flawed instruction. The error was harmless beyond a reasonable doubt.

## POST–CONVICTION HEARING

Failure to provide counsel or a hearing in a state post-conviction proceeding may in some cases provide a basis for reexamining state court findings of fact. They are not constitutional violations that affect the legality of petitioner's continued confinement. *Noble v. Sigler*, 351 F.2d 673 (8th Cir. 1965).

The court is presently of the opinion that all of petitioner's claims should be denied.

IT IS THEREFORE ORDERED:

1. That the petition is dismissed for the reasons stated in this order.

2. That the petitioner's motion for a certificate of probable cause to appeal from this decision is allowed. 28 U.S.C. § 2253.