**Benjamin GARDNER, Petitioner,**

v.

**R. C. FORISTER and the State of North Carolina, Respondents.**

**No. C-C-79-014.**

United States District Court,
W. D. North Carolina,
Charlotte Division.

April 9, 1979.

No appearance, for petitioner.

Richard N. League, Asst. Atty. Gen., North Carolina Dept. of Justice, Raleigh, N. C., for respondents.

## ORDER GRANTING WRIT OF HABEAS CORPUS

McMILLAN, District Judge.

In April, 1975, petitioner Benjamin Gardner was convicted of second degree murder for the March, 1974, fatal shooting of James Franklin Poe. Petitioner's conviction was affirmed by the North Carolina Court of Appeals (28 N.C.App. 484, 221 S.E.2d 741 (1976)); the North Carolina Supreme Court denied certiorari (289 N.C. 616, 223 S.E.2d 393 (1976)). In his present petition, Gardner raises four claims: (1) the burden of proof to reduce the crime from second degree murder to manslaughter was unlawfully placed upon him by the trial court in its instructions to the jury; (2) the burden of proving that the killing occurred in self-defense was also unlawfully placed upon him; (3) no *Miranda* warnings were given to petitioner by officers who took his statement shortly after the shooting; and (4) his trial counsel was ineffective.

Petitioner has exhausted state remedies with respect to his first and second contentions. *See* Defendant-Appellant's Brief at 15.

At the conclusion of the evidence at petitioner's trial, the court instructed the jury that it had three choices: it could convict petitioner of second degree murder, convict him of manslaughter, or acquit him. The court framed its second degree murder and manslaughter instructions as follows:

"Now, I instruct you that for you to find the defendant guilty of second degree murder, the State must prove two things beyond a reasonable doubt. *First,* that the defendant Benjamin Gardner, *intentionally, and without justification or excuse, and with malice* shot James Franklin Poe with a deadly weapon. Malice is not only hatred, ill will or spite as it is ordinarily understood; to be sure, that is malice, but it also means that

condition of mind which prompts a person to take the life of another intentionally or to intentionally inflict with a deadly weapon upon another which proximately results in his death without just cause, excuse or justification.

"A .38 caliber pistol is a deadly weapon. Second, the State must prove that the shooting at the Copra Restaurant and Club was a proximate cause of James Poe's death. A proximate cause is a real cause; a cause without which James Poe's death would not have occurred. If the State proves beyond a reasonable doubt that the defendant intentionally killed James Poe with a deadly weapon, that is, a pistol or intentionally inflicted a wound upon James Poe with a deadly weapon that approximately [sic] caused his death, the law raises two presumptions. First, that the killing was unlawful and second, that it was done with malice. Then, nothing else appearing, the defendant would be guilty of second degree murder.

"In order to reduce the crime from second degree murder to manslaughter, the *defendant,* Ben Gardner, *must prove,* not beyond a reasonable doubt, but simply *to your satisfaction that there was no malice on his part and in order to excuse his act altogether on the grounds of self defense, the defendant must prove, not beyond a reasonable doubt, but simply to your satisfaction that he acted in self defense.*

\*　　\*　　\*　　\*　　\*　　\*

"To negate malice and thereby reduce the crime from second degree murder to manslaughter, the defendant must satisfy you of three things. First, that he, Ben Gardner, shot James Poe in the heat of passion. . . .

"Second, that his passions were produced by acts of James Poe which the law regards as adequate provocation. . . .

"And third, that the shooting took place so soon after the provocation that the passion of a person of average mind and disposition would not have cooled."

Record on Appeal, pp. 54–56 (emphasis added).

In charging the jury on the issue of self-defense, the court gave the following instruction:

"To excuse the killing entirely on the ground of self-defense, the defendant, Benjamin Gardner, must satisfy you of four things. First, that it appeared to the defendant that he, Benjamin Gardner, believed it to be necessary to shoot James Poe in order to save himself from death or great bodily harm. Second, that the circumstances as they appeared to the defendant at the time were sufficient to create such a belief in the mind of a person of ordinary firmness.

\*　　\*　　\*　　\*　　\*　　\*

"Third, that the defendant was not the aggressor. If Benjamin Gardner voluntarily and without provocation entered the fight, he was the aggressor. One enters a fight voluntarily if he uses toward his opponent abusive language which, considering all of the circumstances, is calculated and intended to bring on a fight.

"And fourth, that the defendant did not use excessive force; that is, more force than reasonably appeared to be necessary to the defendant at the time." Record on Appeal, pp. 56–57.

Simply stated, petitioner's claim is that these two instructions violate the rule of *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), that the State is required to prove every essential element of the crime beyond a reasonable doubt. In *Hankerson v. North Carolina,* 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977), the *Mullaney* rule was declared to apply retroactively to convictions such as petitioner's. Although the issue was squarely raised by petitioner in his brief to the North Carolina Court of Appeals, that court failed to mention the claim in its disposition of the appeal.

In *Mills v. Shepherd,* 445 F.Supp. 1231 (W.D.N.C.1978), this court reviewed a virtually identical instruction on malice, as well

as a North Carolina trial court's failure to instruct the jury on self-defense. The court stated:

"Both malice and unlawfulness, which include the absence of self-defense, are elements of second-degree murder in North Carolina. *State v. Foust,* 258 N.C. 453, 128 S.E.2d 889 (1963); *State v. Adams,* 241 N.C. 559, 85 S.E.2d 918 (1955). Both are presumed upon proof beyond a reasonable doubt of intentional wounding with a deadly weapon. *State v. Jones,* 287 N.C. 84, 214 S.E.2d 24 (1975).

\* \* \* \* \* \*

"Omission of any instruction on an issue the prosecution must prove beyond a reasonable doubt heavily implicates a due process violation where there is some evidence to support a factual dispute. [*See Hankerson v. North Carolina,* 432 U.S. at 233, 237 n. 3, 97 S.Ct. 2339, 53 L.Ed.2d 306].

\* \* \* \* \* \*

"Errors of constitutional dimension are not harmless unless the court 'is able to declare a belief that it was harmless beyond a reasonable doubt.' *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967)."

445 F.Supp. at 1236–37.

█ The law of North Carolina continues to be that the elements of malice *and* unlawfulness are essential to a second degree murder conviction; the North Carolina courts have consistently so ruled. *State v. Berry,* 295 N.C. 534, 246 S.E.2d 758 (1978); *State v. Hankerson,* 288 N.C. 632, 220 S.E.2d 575 (1975); *State v. Sprinkle,* 30 N.C.App. 383, 226 S.E.2d 827 (1976).

█ As the Court noted in *Mills,* an instruction placing the burden on petitioner to satisfy the jury of the absence of malice, or that the killing was committed in self-defense, is constitutional error unless the court should find that there was no evidence to support verdicts of either manslaughter or not guilty, or the instruction was otherwise *harmless error beyond a reasonable doubt.* 445 F.Supp. at 1236–37; accord, *Hankerson v. North Carolina, supra* at

537, 246 S.E.2d 758 n. 3; *Wilkins v. Maryland,* 402 F.Supp. 76 (D.Md.1975). *Compare Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) (State need not prove beyond a reasonable doubt matters not established under state law as essential elements of the crime at issue). Reference to the facts is therefore necessary.

The record shows that petitioner Gardner was the owner of the Copra, a restaurant and lounge in Charlotte, North Carolina. Petitioner and the decedent, James Poe, were business associates; petitioner had employed decedent as the manager of another lounge with the prospect, according to petitioner, of entering into a partnership at a later time. On Sunday morning, March 3, 1974, James Poe and petitioner were at the Copra lounge with some friends, when they began to quarrel about a $60.00 loan petitioner had made to decedent to help pay for a third person's food stamps. The argument heated up and petitioner demanded the keys to the other lounge. Decedent threw them across the floor. Record on Appeal, pp. 32, 37–39. According to petitioner's testimony, the decedent threatened him after throwing the keys, approached petitioner, and threw the first punch. After the two were locked in struggle, Poe took something out of his pocket with his right hand and raised it above petitioner, who struggled to fend off a blow from that hand. Record on Appeal, pp. 32, 35, 40. Petitioner then reached into his pocket, pulled out a gun, and fired. According to petitioner and according to a statement given to police by a witness to the scuffle, the first shot was not actually directed at Poe. Record on Appeal, pp. 35, 40. Poe continued to come at petitioner; petitioner fired again, striking Poe and causing Poe to fall forward and on top of petitioner, knocking both of them into a booth. With Poe lying on top of him, petitioner fired a third time. *Id.*

There was a substantial factual dispute as to whether the object decedent had in his hand when he attempted to strike petitioner was a kitchen knife that the decedent

had been in the practice of carrying with him. Record on Appeal, p. 36. Petitioner testified that Poe had in fact grabbed the knife. Other witnesses testified to statements, assertedly made by petitioner after the fight, that petitioner did not think that Poe had the knife during the fight, and that in any event petitioner had not seen the knife at the time he shot Poe. A witness to the beginning of the fight stated that he did not know what object the decedent had had in his hand. *See* Record on Appeal, pp. 15, 21, 32, 40. Petitioner testified at trial, consistent with his statement given to Officer King of the Charlotte Police Department, that he "got mad" with Poe when the fight started and Poe struck him. *See* Record on Appeal, pp. 15, 44, 51.

▮ In their Answer and Motion to Dismiss, respondents concede that "the defense evidence showed reasonable resistance to an assault with a deadly weapon i. e. self defense." *Id.* at 3. There was some evidence that the decedent was the aggressor and attacked petitioner with a weapon, and that petitioner, reasonably believing himself to be in serious personal jeopardy, shot to save himself from death or serious bodily harm. Petitioner presented enough evidence of self-defense to negate any state law presumption of the absence of self-defense and to require that the jury find, beyond a reasonable doubt, the absence of self-defense. The failure of the trial court so to instruct the jury was not harmless error.

In response to petitioner's claim that the trial court's instruction on manslaughter was also prejudicial error, respondents state: "The absence of evidence of manslaughter is stark, for the [S]tate's evidence . . . showed an unprivileged, unprovoked killing with a deadly weapon, the equivalent of second degree murder in North Carolina." *Id.* at 3.

▮▮ The court does not sit as a retrier of fact in determining whether prejudicial error was committed. When a conviction is attacked collaterally as not sufficiently supported by the evidence to pass constitutional muster, the court's role is limited to determining whether there was *any* evidence to support conviction—a minimal test to insure that the verdict *could* have resulted from rational jury decision-making. *See, e. g., Holloway v. Cox,* 437 F.2d 412 (4th Cir. 1971). So, too, when a conviction is attacked collaterally as having resulted from the prejudicial effects of a constitutionally deficient jury instruction, the court's role is equally narrow: it must determine only whether *any* evidence would support mitigation or acquittal—a minimal test to insure that a criminal defendant *could* have received the benefit of every possible, favorable, and rational decision. *See generally Hunter v. Williams,* 570 F.2d 510 (4th Cir. 1978).

▮ In North Carolina, voluntary manslaughter " 'is the intentional unlawful killing of a human being without malice, either express or implied, and without deliberation or premeditation.' " *State v. Rummage,* 280 N.C. 51, 56, 185 S.E.2d 221, 225 (1971). A proper charge on the issue of voluntary manslaughter is required when the evidence would support a finding either (a) that the defendant acted properly in self-defense except for the use of excessive force in repelling the assailant, or (b) that the defendant killed while in the heat of passion brought on by adequate provocation, amounting to an assault or threatened assault, not originating with the defendant. *Id.; State v. Cooper,* 273 N.C. 51, 159 S.E.2d 305 (1968); *State v. Hightower,* 226 N.C. 62, 36 S.E.2d 649 (1946).

In *State v. Cooper, supra,* defendant was prosecuted for second degree murder for the shooting death of James Henry Sanders. At trial, defendant testified as follows:

"While defendant was in the kitchen, Sanders came up behind him playing and hit him on his back. He told Sanders, 'Stop playing so much, when you're drunk you act like a little child.' A little later he heard Sanders say 'M. F., I don't like you noway.' He looked around and saw Sanders coming on him with a knife. Then Sanders said, 'Another G. D. word, I am going to pull your head off.' Defend-

ant was back in the corner and saw Sanders coming toward him with a knife in his hand. He shot into the floor with a pistol he carried hanging out of his hip pocket for protection. After this shot it seemed like Sanders was coming on a little faster, and he shot at him three or four more times hitting him in the hand and in the stomach. He was afraid of Sanders and knew if he got to him with that knife he would cut him. He shot him in order to defend himself. After he shot him the last time, Sanders looked at him, kind of half-way laughed, turned around, walked back to the door, fell across two chairs, and then rolled over on the floor."

273 N.C. at 55, 159 S.E.2d at 307. In rebuttal, the prosecution offered evidence that the decedent did not have a knife in his possession at the time he was shot by defendant Cooper. The State Supreme Court found that although the evidence would have supported a conviction for second degree murder, the jury's verdict of guilty of manslaughter was also "supported by the evidence," under the theory of "heat of passion" or under the theory of excessive force in self-defense. *Id.* at 58, 159 S.E. 305.

■ The facts in *Cooper*, and the substantial factual dispute presented to the jury, are remarkably similar to the case at bar. It appears uncontradicted that decedent Poe was verbally abusive and the instigator of the fight. The reasonableness of petitioner's response to the assault, and his state of mind at the time of response, were matters of jury interpretation which *could*, under proper instruction, have resulted in a conviction of manslaughter under either the theory of heat of passion or the theory of excessive force. The failure to instruct the jury in accordance with the mandate of *Mullaney v. Wilbur* was not harmless error.

Petitioner is entitled to be relieved of the burden of his present conviction for the murder of James Poe.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED:

1. That the conviction is set aside and the writ of habeas corpus is granted.

2. That if petitioner is not retried within sixty days of the filing date of this order, he shall be released from custody.