STATE v. T. L. MUNDY.

(Filed 23 November, 1955.)

**1. Criminal Law § 52a (9)—**

The trial court's election not to submit to the jury one of the charges will be treated as the equivalent of a verdict of not guilty on that count.

**2. Criminal Law § 21—**

Defendant was charged with reckless driving, with speeding and with homicide. Nonsuit was allowed on the charge of reckless driving, and the court did not submit the charge of speeding to the jury. *Held:* The elimination of the charges of reckless driving and speeding at the nonsuit level did not preclude prosecution of the charge of homicide.

**3. Automobiles § 59—**

> The evidence tended to show that a passenger in an automobile driven by defendant was killed when defendant, in traversing a curve, ran off the road to the right, then to the left, then to the right into a yard, and struck a parked vehicle, knocking it some 47 feet. There was also evidence that defendant was traveling at excessive speed. *Held:* The evidence was sufficient to be submitted to the jury on the charge of manslaughter.

**4. Automobiles § 57—**

> Even though the acts of defendant are sufficient to constitute reckless driving, defendant may not be convicted of homicide predicated thereon unless the jury also finds beyond a reasonable doubt that such reckless driving was the proximate cause of the wreck resulting in the death of a person.

**5. Automobiles § 60—**

> An instruction correctly defining the elements of reckless driving, but failing to charge the jury that such acts must be the proximate cause of the wreck and resultant death of the deceased in order for defendant to be guilty of manslaughter, is erroneous, and is prejudicial, particularly when defendant's testimony is to the effect that he fell asleep at the wheel while traveling at a lawful speed, and the court fails to instruct the jury on the law in regard to culpable negligence in falling asleep at the wheel.

**6. Automobiles §§ 22, 56—**

> The mere fact that the operator of a motor vehicle involuntarily goes to sleep while operating his automobile does not, nothing else appearing, constitute culpable negligence, it being necessary for this conclusion that the operator have premonitory symptoms of sleep, and, notwithstanding awareness of the likelihood of falling asleep, continued to operate the vehicle under circumstances evincing a thoughtless disregard of consequences or a heedless indifference to the rights and safety of others upon the highway, proximately resulting in injury or death.

Appeal by defendant from *Rousseau, J.*, and a jury, at June Term, 1955, of Wilkes.

Criminal prosecution tried upon two bills of indictment. One bill charges the defendant in separate counts with (1) reckless driving in violation of G.S. 20-140, and (2) speeding in violation of G.S. 20-141. The other bill charges the defendant with the felonious slaying of one Jesse Wyatt (G.S. 15-144). A general plea of not guilty was entered.

The evidence on which the State relies tends to show that the defendant, former State Highway patrolman, went off duty and left the Highway Patrol office in North Wilkesboro sometime before 4:00 a.m. on the morning of 8 November, 1954. He was requested by a civilian friend, Hayden Church (who had been with the defendant earlier that night on a speed watch), to drive him to his home, which was located about 7 miles west of North Wilkesboro. He agreed to do so. Jesse Wyatt, the deceased, went along for the ride. The defendant was driving his

patrol car. Church was sitting in the middle and Wyatt on the outside of the front seat. At a point on U. S. Highway No. 421 about five miles west of North Wilkesboro at a roadside store and service station known as Sunshine Market, the car ran off the right side of the highway into the yard in front of the Sunshine Market. There, the patrol car collided with a Buick automobile which was parked side of the gasoline pumps. In the collision both cars were badly damaged and Jesse Wyatt was killed. One of the gasoline pumps was overturned, and the parked Buick was knocked about 47 feet toward the building. The patrol car came to rest about 17 feet beyond the point of impact. Tire marks behind the patrol car were traced from the point of impact back through the dirt driveway leading into the service station for 59 feet, and on back an additional 100 feet along the dirt shoulder of the highway. Farther east, at a curve about 600 feet from the Sunshine Market, tire marks were found on the shoulders of the highway where the defendant said he ran off the pavement first on his right and then, after cutting back, over on the left side. The witness Gaither, whose home is about 100 feet from where the collision occurred, testified that on the morning in question he was awakened by a loud noise that sounded like tires "screaming on the road," followed by the crash. Other evidence offered by the State tends to show that the patrol car driven by the defendant was traveling at a high rate of speed. A written statement signed by the defendant several days later in the hospital states that he was driving the "patrol car not over sixty-five (65) miles per hour immediately prior to the collision."

However, the defendant testified at the trial that he was not driving over 50 or 55 miles per hour. He further testified that after running off the highway, first on the right side and then on the left, at the curve 600 feet east of where the collision occurred, he does not remember anything—"I don't know what happened from then on . . . The only explanation that I have as to what happened from that time to the collision is that I had been working sixteen and a half hours without sleeping, except for supper, and . . . I think I must have fallen off to sleep, dozed, or just fallen off to sleep at that curve."

The record discloses that at the conclusion of all the evidence, the defendant moved "for judgment as of nonsuit as to both charges, that of reckless driving and that of manslaughter. Motion allowed on the charge of reckless driving. Motion denied on the charge of manslaughter, . . ." The record contains no further reference to the charge of speeding. However, the case was submitted to the jury only on the charge of involuntary manslaughter. As to this, the jury returned a verdict of guilty. From judgment imposing a prison sentence of fifteen months, the defendant appeals.

*Attorney-General Rodman and Assistant Attorney-General Love for the State.*

*W. H. McElwee, Kyle Hayes, and Robert Burns for the defendant, appellant.*

JOHNSON, J.   The trial court's election not to submit to the jury the charge of speeding will be treated as the equivalent of a verdict of not guilty on that count.   See *S. v. Sorrell,* 98 N.C. 738, 4 S.E. 630; *S. v. Murphy,* 235 N.C. 503, 70 S.E. 2d 498.

The defendant insists that since the State's case on the charge of manslaughter rested entirely upon evidence of speeding and reckless driving as the ingredients of culpable negligence causing the death of Jesse Wyatt, the elimination at the nonsuit level of these specific charges removed from the case the elements of culpable negligence necessary to support a conviction of involuntary manslaughter, and that the court erred in refusing to allow the motion for nonsuit on the homicide count.   The contention is without merit, and the assignment of error relating thereto is overruled on authority of the decision in *S. v. Midgett,* 214 N.C. 107, 198 S.E. 613.   The decision in *S. v. Rawlings,* 191'N.C. 265, 131 S.E. 632, cited and relied on by the defendant, is distinguishable.   The evidence on which the State relies was sufficient to carry the case to the jury on the homicide count.   The motion for judgment as of nonsuit was properly overruled.

However, we are constrained to the view that the defendant is entitled to a new trial for error in the charge.

The court in charging the jury said: ". . . but if you find, gentlemen, that . . . he was operating it (his automobile) carelessly and heedlessly in a wilful or wanton disregard of the rights and safety of others, and you find it was accompanied with such carelessness, or probably consequences of a dangerous nature when tested by the rules of reasonable prevision amounting to a thoughtless indifference to consequences or a heedless indifference to the rights and safety of others upon the highways, and if you find those facts, gentlemen, and all of them beyond a reasonable doubt, it would be your duty to return a verdict of guilty."

The foregoing formula is incomplete and erroneous, in that it does not contain the element of proximate cause as an essential ingredient of culpable negligence justifying conviction of involuntary manslaughter.   Here, the court was instructing the jury on reckless driving (G.S. 20-140) as a possible element of culpable negligence.   It may be conceded that the state of facts included in the formula used by the court was sufficient to justify a finding that the defendant was guilty of reckless driving.   But in order to justify a conviction of involuntary

manslaughter based on the facts contained in the court's formula given to the jury, constituting reckless driving, it was necessary that the jury go further and find beyond a reasonable doubt that such reckless driving was the proximate cause of the wreck and resultant death of the deceased Jesse Wyatt. *S. v. Phelps,* 242 N.C. 540, 89 S.E. 2d 132; *S. v. Wooten,* 228 N.C. 628, 46 S.E. 2d 868; *S. v. Cope,* 204 N.C. 28, 167 S.E. 456. The challenged instruction did not require the jury to find this essential element of proximate cause. The instruction given by the court authorized the jury to convict of manslaughter upon a mere finding beyond a reasonable doubt of the facts embraced in the court's formula, constituting reckless driving, without any finding whatsoever in respect to the causal connection between such reckless driving and the death of Wyatt. This failure to instruct as to causal connection may not be treated as harmless error, particularly so in view of (1) the defendant's testimony that he fell asleep at the wheel while driving not more than 50 or 55 miles per hour, and (2) the failure of the court to instruct the jury on the law governing criminal liability for death or injury caused by the operator of a motor vehicle falling asleep at the wheel. As to this, the mere fact that the operator of a motor vehicle involuntarily goes to sleep while operating his automobile does not, nothing else appearing, constitute culpable negligence. In determining the question of culpable negligence, the focal point of inquiry is whether the operator, because of drowsiness, previous tiring activities, or other premonitory symptoms of sleep, became aware of the likelihood of falling asleep, but nevertheless continued to operate the vehicle under circumstances evincing a thoughtless disregard of consequences or a heedless indifference to the rights and safety of others upon the highway, proximately resulting in injury or death. See *S. v. Cope, supra; People v. Robinson,* 253 Mich. 507, 235 N.W. 236; *Johnson v. State,* 148 Fla. 510, 4 So. 2d 671. See also *Baird v. Baird,* 223 N.C. 730, 28 S.E. 2d 225; Annotation: 28 A.L.R. 2d 12, 72.

New trial.