STATE OF NORTH CAROLINA v. LILLIAN JANE THOMAS

No. 109A88

(Filed 7 December 1989)

1. **Homicide § 30.3 (NCI3d) — first degree murder — felony murder — involuntary manslaughter not submitted — error**

    The trial court erred in a first degree murder prosecution by not submitting to the jury the lesser-included offense of involuntary manslaughter where the murder charge arose from the felony of discharging a firearm into an occupied structure. That the State elected to prosecute defendant solely on a felony murder theory does not abrogate defendant's entitlement to have the jury consider all lesser-included offenses supported by the indictment and raised by the evidence.

    **Am Jur 2d, Homicide §§ 94, 498, 531.**

2. **Homicide § 21.9 (NCI3d) — first degree murder — lesser included offense of involuntary manslaughter — sufficiency of evidence**

    There was sufficient evidence in a first degree murder prosecution to support a conviction for involuntary manslaughter where the jury could reasonably have found from the evidence that defendant's continuing to drive while another person

repeatedly discharged his gun amounts to a disregard for the rights and safety of others that proximately caused the victim's death.

**Am Jur 2d, Homicide § 94.**

Justice MITCHELL dissenting.

Justice WEBB joins in this dissenting opinion.

APPEAL by defendant pursuant to N.C.G.S. § 7A-27(a) from conviction and judgment entered thereon imposing a sentence of life imprisonment for the murder in the first degree of Vickie White Calhoun, *Cornelius, J.,* presiding, at the 25 November 1987 Criminal Session of Superior Court, FORSYTH County. Heard in the Supreme Court 15 February 1989.

*Lacy H. Thornburg, Attorney General, by Barry S. McNeill, Assistant Attorney General, for the State.*

*Danny T. Ferguson for defendant-appellant.*

EXUM, Chief Justice.

Defendant was tried on a bill of indictment charging that defendant "unlawfully, willfully and feloniously and of malice aforethought did kill and murder Vickie White Calhoun." The case was prosecuted as a first degree felony murder on the theory that the murder of Vickie White Calhoun occurred during the perpetration of the felony of discharging a firearm into an occupied structure in violation of N.C.G.S. § 14-34.1. The jury was instructed that it could return verdicts of guilty of first degree felony murder or not guilty. Upon the return of a verdict of guilty the jury at a separate sentencing proceeding recommended, and the trial court imposed, a sentence of life imprisonment. The question presented is whether the trial court erred in failing to submit to the jury the alternative verdict of guilty of involuntary manslaughter. We conclude this was error entitling defendant to a new trial.

I

Evidence presented at trial tended to show that Vickie Calhoun and her husband lived in the northern part of Forsyth County at 1197 Tobaccoville Road, Rural Hall. On the night of 17 March 1987, she was standing in the living room of their house talking

to her husband when a bullet came through the front window. The bullet struck Vickie Calhoun in the chest, pierced her heart and killed her.

Nine separate shooting incidents in northern Forsyth County during this evening were reported to the Forsyth County Sheriff's Department. The State's evidence tended to show as follows with regard to these shootings: Defendant and Jackie Ray Brewer engaged together in an hour-long shooting spree beginning at approximately 9 p.m. on 17 March 1987, during which defendant drove her 1972 four-door Plymouth Valiant around northern Forsyth County while Jackie Brewer was shooting a .22 caliber pistol from the front passenger's seat. Brewer fired between ten and fifteen shots, hitting a truck and four houses and killing Vickie Calhoun.

Defendant and Brewer met on the afternoon of 17 March when Brewer agreed to check the brakes on defendant's car. Brewer had a chrome-colored pistol with him, and had recently purchased a black .22 caliber revolver from a friend named Eddie White. White stated at trial that he, defendant and Brewer had a conversation on 17 March, during which White told Brewer the best place to buy ammunition was K-Mart. White testified that defendant offered to buy the ammunition because Brewer did not have a valid driver's license.

Donald Stout testified for the State pursuant to a written agreement. Stout had been arrested and charged with the murder of Vickie Calhoun at the end of March 1987, and was released on bail one month later. He was imprisoned again in late July after failing to make a court appearance, and he subsequently began to send messages from jail to the law enforcement officers investigating the murder. The agreement was that in return for Stout's testimony at defendant's and Brewer's trials, the State would release him from jail and dismiss the murder charge against him.

Stout testified that Brewer introduced defendant to him at the Dunkin' Donuts on Peters Creek Parkway in Winston-Salem on the evening of 17 March 1987. Defendant was there with her two small sons, and Brewer had his six-year-old son with him. Brewer, Stout and defendant decided to buy marijuana in Rural Hall and left Dunkin' Donuts between 8 and 8:30 p.m. Defendant drove. Brewer and his son sat in the front passenger's seat. Stout sat in the rear passenger seat with defendant's two children. Stout

could not remember the route defendant took from the Mount Airy exit on Interstate 40 to where she purchased marijuana in Rural Hall. He did recall that defendant was within two miles of Tobaccoville Road, where the victim Vickie Calhoun lived, when she bought the marijuana. Defendant purchased three "joints," and she, Stout and Brewer smoked them as they drove around with the three children.

Stout further testified that shortly after they finished smoking the marijuana he heard a gun discharge and a bullet ricochet off a metal street sign. Stout stated that Brewer fired the shot. Brewer continued to shoot a pistol out of the window of defendant's car for approximately an hour. During this hour, Stout remembered Brewer firing ten to fifteen shots.

Stout testified that Jackie Brewer fired a handgun aimed at a truck, the Kye residence, the Calhoun residence, the Cain residence, and the McGee residence. Additionally, he testified that before Brewer shot at each residence defendant told Brewer: "Why don't you aim for the lights." Stout also remembered that Brewer fired his gun at a mobile home lot and into some stores. Stout could not remember the directions from which the car approached Brewer's targets, on which side of the street the houses shot at were located, or the order of the shootings.[1]

Defendant presented the following evidence in her defense: Brewer met her on 17 March and went to Kernersville to look

---

1. Stout's testimony, upon which much of the State's case rests, contradicts statements Stout gave investigating officers before he was arrested and struck the bargain. On 24 March 1987, Stout told officers that defendant drove out along the countryside where there were no streetlights, and Brewer fired his pistol at some road signs. He did not shoot at houses. When driven to Rural Hall by the investigating officers, Stout—who had seen a picture of the Calhoun residence in the newspaper earlier that week—said that the Calhoun home looked "familiar." Stout told the officers that defendant, Brewer and he had stopped on a bridge on the night of the shooting, but he was not sure of the bridge, or any of their locations that night because he was intoxicated. At trial Stout testified he and a friend had smoked eight to ten marijuana cigarettes on the afternoon of the shooting; additionally, Stout had consumed three or four bourbon drinks and smoked a portion of a "joint" by himself later in the day.

After his arrest, Stout gave his attorneys a written statement in which he said seeing the Calhoun residence in the newspaper prompted his recall of seeing that house "less than five seconds" after hearing a gunshot, but that he did not know whether Brewer was shooting at houses. He heard Brewer and defendant say something about lights.

at her car, a light blue four-door with vertical taillights, no interior dome light, and no third brake light in the rear window. Defendant then drove Brewer to his home in Winston-Salem, where Brewer introduced her to Eddie White. No conversation about buying bullets occurred. Defendant drove her sons and Brewer to the home of Tina and Barbara Pressley, friends who often babysat her children, to ask them to watch her sons. The Pressleys were not home. Defendant then drove Brewer to K-Mart, where Brewer purchased bullets. Defendant did not know Brewer had a gun with him.

Defendant next drove to the Dunkin' Donuts on Peters Creek Parkway in Winston-Salem, where Brewer went inside. He returned with his six-year-old son, Jonathan Martin, and Donald Stout, neither of whom defendant knew. Defendant and her five passengers then returned to the Pressley residence, again finding no one home. At Brewer's request, defendant drove to a residence in Winston-Salem where Brewer tried to sell a small, black .22 caliber revolver. Brewer returned to the car at approximately 9 p.m., when the three adults discussed buying marijuana. Thinking she could purchase marijuana in Kernersville, defendant drove there from Winston-Salem. The car was filled with cigarette smoke, and Brewer rolled down his window. Shortly thereafter, while on Highway 150 driving east toward Kernersville, defendant heard a gunshot. She then heard three or four more shots and the sound of a bullet hitting a road sign. Brewer was discharging a small black revolver out the car's window.

Until she heard the first gunshot, defendant did not know Brewer had a firearm in his possession. After Brewer fired these shots on Highway 150, she asked him to put the gun away, and he did.

After arriving at Spring Brook Apartments in Kernersville, the residence of William Broughton,[2] defendant entered the building and bought three "joints" of marijuana. She proceeded to her own apartment and then drove to The Pantry, a store on Main Street in Kernersville a few blocks away.[3]

---

2. William Broughton testified as a witness for the State that defendant was at this apartment between 7 p.m. and 8 p.m. on 17 March.

3. Paul Bailey and Ernest Hodges both testified that defendant was at The Pantry at approximately 9:45 p.m. on 17 March. A private investigator testified that the routes between The Pantry in Kernersville and the McGee residence north of Rural Hall, at which shots were fired after 9:30 on 17 March, varied between 18.5 miles and 21.6 miles and required 24 to over 27 minutes to travel.

STATE v. THOMAS

[325 N.C. 583 (1989)]

Upon leaving The Pantry, defendant drove to her mother's home and back towards Winston-Salem on Linville Road. Near Salem Lake Brewer again discharged a handgun out the window, firing four or five times. Defendant told Brewer to put the gun up and not to use it again. Brewer never fired at houses but only at passing road signs and into woods. They arrived in Winston-Salem without further incident, and at 10:30 p.m. defendant dropped Donald Stout off at Dunkin' Donuts.

Additional testimony offered by defendant tended to show persons in one or more cars other than defendant's discharged firearms in the area of the Calhoun residence during the evening of 17 March 1987. The shootings began at 8:52 p.m. when a bullet was fired at the Shaffner residence and a front window of a nearby business on Reynolda Road, Highway 67, west of Tobaccoville. Eight minutes later Bobby Kye witnessed a compact-sized car with wraparound taillights and a rear-window brake light pull into his driveway on Ridge Road, a short distance northeast from the Shaffner residence. A bullet was fired into Kye's house, and he called the sheriff's department at 9:01 p.m. Shortly after this a truck traveling north on Highway 52 was fired upon from the Westinghouse Road overpass. The overpass is east of the Kye residence, toward Rural Hall. The truck driver saw a vehicle traveling east on Westinghouse Road stop on the overpass. Its dome light came on. Moments later a bullet ricocheted off the hood of the truck and into the windshield. This shooting was reported to the sheriff's office at 9:23 by another driver at a nearby truck stop.

Westinghouse Road merges with Tobaccoville Road east of the overpass toward Rural Hall. The shooting of Vickie Calhoun was reported to the sheriff's department at 9:11, after her husband summoned an ambulance. At 9:14 Lena Cain reported that a bullet was fired into her home. The Cains live about 250 yards east of the Calhoun residence along Tobaccoville Road. Two witnesses who were parked in the road heard a gun being fired; shortly after hearing a second shot, one witness watched a light-colored car drive past the parked cars. The witness could not see the driver and noticed only one other passenger, someone with shaggy hair in the front seat.

Tobaccoville Road runs northeast into Rural Hall. Numa and Angie McGee live just north of Rural Hall on Edwards Road. At approximately 9:45 on the night of Vickie Calhoun's death, Numa

STATE v. THOMAS

[325 N.C. 583 (1989)]

McGee saw three cars traveling north past the McGees' house. A dark car was followed closely by a white car, which in turn was followed closely by a sheriff's patrol car. Angie McGee also saw the white car closely followed by the patrol car. A few minutes later the couple saw the patrol car traveling back toward Rural Hall, and a short time later, both heard a shot and saw the darker car and the white car traveling back in the same direction. Numa McGee saw the white car pass under a street lamp; a person was leaning from the passenger window of the car pointing a rifle at a trailer owned by Numa McGee and occupied by his brother, Curtis McGee. A bullet had been fired through Curtis McGee's trailer, and both Numa and Curtis McGee called the sheriff's department to report the shooting.

Two other shootings on the night of 17 March 1987 were reported; shots were fired into a discount store and recreation vehicle on a sales lot located in Stanleyville, a few miles south of Rural Hall. That night two employees at a gas station in Stanleyville reported a suspicious person to the sheriff's department. Shortly after 10 p.m. a man appearing to be under the influence of alcohol or drugs entered the gas station and demanded to use the telephone. The employees said they could not allow customers to use the phone unless it was an emergency, and the man asked them what they would do if "the damned Yankees came down here and shot and raped you and your sisters and the other women around here"; he then apologized and told them that if they wanted to call the police to go ahead. He asked if they wanted to get his license plate number while he was there or when he left, and told the employees, "You'll read about me tomorrow in the papers." He returned to a small, light-colored hatchback car, entered the passenger side and the car drove off. The vehicle had a red stripe along its side and had a third brake light in the rear window. When a local customer who had listened to his police scanner stopped at the gas station fifteen minutes later and related the descriptions of the shootings and the car involved he had heard, the employees decided the car the man had entered was similar to the one police thought was involved in the shootings, and they called the sheriff.

Bobby Kye testified that after observing defendant's car, which the sheriff's department had impounded, he concluded it was not the car from which shots were fired at his home. Numa McGee testified that the car he saw under the streetlamp after hearing

STATE v. THOMAS

[325 N.C. 583 (1989)]

the shot fired at his brother's trailer was small and white, shaped like a Ford Pinto with a red stripe along its side. Based on photographs they were shown of defendant's car, both Mr. and Mrs. McGee testified defendant's car was not the one they had seen under the light on 17 March. A number of witnesses testified to hearing on police scanners a description of the car believed to be involved in the shootings of 17 March 1987. The description broadcast by the sheriff's department was of a small white car with a red stripe.

Ballistic evidence tended to show that none of the bullets recovered from the shooting sites, including the bullet retrieved from Vickie Calhoun's body, was fired from the black revolver Eddie White sold Brewer on 16 March 1987. This gun was offered by the State as an exhibit at trial and identified by both defendant and the State's witness Donald Stout as the .22 caliber revolver Brewer fired on 17 March 1987. A shell casing found on the Westinghouse Road overpass of Highway 52 was not fired from this gun, nor was this brand of ammunition sold at the K-Mart where Brewer bought bullets. Investigators never recovered the silver gun Eddie White said he saw in Brewer's possession on 17 March. Additional evidence, pertinent to defendant's assignment of error, will be discussed in our consideration of that assignment.

II

In her first assignment of error, defendant contends the trial court erred in failing to charge the jury on involuntary manslaughter. Defendant maintains evidence presented would support a conviction of involuntary manslaughter and that the trial court's failure to submit this alternative verdict is error entitling her to a new trial. We agree.

In ruling on whether to charge the jury on a lesser included offense, the trial judge must make two determinations. The first is whether the lesser offense is, as a matter of law, an included offense of the crime for which defendant is indicted. *State v. Weaver*, 306 N.C. 629, 295 S.E.2d 375 (1982). The pertinent statute, N.C.G.S. § 15-170 (1983), provides:

Upon the trial of any indictment the prisoner may be convicted of the crime charged therein or of a less degree of the same crime, or of an attempt to commit the crime so charged, or of an attempt to commit a less degree of the same crime.

STATE v. THOMAS

[325 N.C. 583 (1989)]

The second is whether there is evidence in the case which will support a conviction of the lesser included offense. *State v. Strickland*, 307 N.C. 274, 298 S.E.2d 645 (1983). In *Weaver* the Court, quoting with approval from earlier cases, said:

> When a defendant is indicted for a criminal offense, he may be convicted of the charged offense or a lesser included offense when the greater offense charged in the bill of indictment contains all of the essential elements of the lesser, all of which could be proved by proof of the allegations in the indictment. Further, when there is some evidence supporting a lesser included offense, a defendant is entitled to a charge thereon even when there is no specific prayer for such instruction, and error in failing to do so will not be cured by a verdict finding a defendant guilty of a higher degree of the same crime.

*Weaver*, 306 N.C. at 631-32, 295 S.E.2d at 377.

A.

[1] Involuntary manslaughter is a lesser included offense of the crime of murder as charged in the bill of indictment. This indictment was in the form prescribed by N.C.G.S. § 15-144. "An indictment for homicide in the words of G.S. § 15-144 will support a verdict of murder in the first degree, murder in the second degree, or manslaughter." *State v. Talbert*, 282 N.C. 718, 721, 194 S.E.2d 822, 825 (1973). Involuntary manslaughter is a lesser included offense of second degree murder and voluntary manslaughter. *State v. Greene*, 314 N.C. 649, 336 S.E.2d 87 (1985). If the indictment here will support a verdict of murder in the second degree or manslaughter under *Talbert*, it will under *Greene* also support a verdict of involuntary manslaughter.

That the State elected to prosecute defendant solely on a felony murder theory does not abrogate defendant's entitlement to have the jury consider all lesser included offenses supported by the indictment and raised by the evidence. *State v. Williams*, 284 N.C. 67, 199 S.E.2d 409 (1973). In *Williams* the defendant was indicted in separate bills: one charging murder, as here, in the form prescribed by N.C.G.S. § 15-144,[4] and the other charging that a

---

4. The form of the indictment does not appear in the *Williams* opinion, but it is set out at page 5 of the Record on Appeal in that case. Records & Briefs Fall Term—1973.

firearm was discharged into an occupied building. As here, the State prosecuted the murder solely on a felony murder theory. The jury was instructed only upon this theory, and was given alternative verdicts of guilty of first degree murder, with and without a recommendation of life imprisonment, or not guilty. The jury returned a verdict of guilty of first degree murder with a recommendation of life imprisonment. Defendant appealed, assigning error to the failure of the trial court to submit second degree murder as a lesser included offense of the homicide charged in the bill of indictment. This Court sustained the assignment and ordered a new trial, holding as to the first degree murder conviction that defendant was entitled to have second degree murder submitted as an alternative verdict. We said:

> [Defendant] was entitled to an instruction applying the law to the facts . . . facts sufficient in law to constitute a complete defense to murder committed in the perpetration of the felony created by G.S. 14-34.1. Too, if the fatal shooting . . . occurred inside of his poolroom, and if the jury found beyond a reasonable doubt that defendant fired the shot that killed Herman Adams, the defendant would not be guilty of more than murder in the second degree . . . . The court's failure to instruct as to the applicable law arising on the evidence . . . applies equally to both indictments. For error in this respect, the verdicts and judgments are vacated.

*Id.* at 75, 199 S.E.2d at 414. *Williams* is clear authority for the proposition that in a felony murder prosecution under an indictment in the form prescribed by N.C.G.S. § 15-144 evidence that defendant did not commit the underlying felony requires an instruction upon whatever lesser included homicides the indictment and the evidence support, and that second degree murder is one of these lesser included homicides. *See also State v. Rinck*, 303 N.C. 551, 280 S.E.2d 912 (1981).

The dissent argues that *Williams* is wrongly decided and has been overruled by *Weaver*. The dissent says the State's election to try a homicide case, and the trial judge's submission of it to the jury, only on a felony murder theory in effect acquits defendant of murder on a theory of premeditation and deliberation and all of its lesser included homicide offenses. Since, according to the dissent, there are no lesser included homicide offenses of first degree felony murder, none should have been submitted here.

We believe *Williams* was correctly decided and has not been overruled by *Weaver*. Indeed, the *Williams* holding is reaffirmed by *Weaver*. *Weaver* adopts the definitional approach to determining what are lesser included offenses but makes clear that the definitions are to be applied to the crimes as charged in the bill of indictment. "G.S. 15-170 . . . provides that a defendant may be convicted on an indictment of (1) the crime charged therein, or (2) a less degree of the crime charged, or (3) an attempt to commit the crime charged, or (4) an attempt to commit a less degree of the crime charged." *Weaver*, 306 N.C. at 638-39, 295 S.E.2d at 380.

The dissent's notion that defendant, while convicted of first degree felony murder, has somehow been acquitted of premeditated and deliberated murder and all lesser homicides which might have been included in this latter offense presupposes that defendant has been charged with, and could have been convicted of, two different crimes—first degree felony murder and first degree premeditated and deliberated murder. Defendant was charged with only one crime, first degree murder; she was convicted of that crime. She has not been acquitted of anything. Premeditation and deliberation is a theory by which one may be convicted of first degree murder; felony murder is another such theory. Criminal defendants are not convicted or acquitted of theories; they are convicted or acquitted of crimes. *See, e.g., State v. Adams*, 266 N.C. 406, 146 S.E.2d 505 (1966); *State v. Cobb*, 250 N.C. 234, 108 S.E.2d 237 (1959); *State v. Mundy*, 243 N.C. 149, 90 S.E.2d 312 (1955); *State v. Love*, 236 N.C. 344, 72 S.E.2d 737 (1952). When the case is returned for a new trial, defendant under the present indictment will again be subject to trial and conviction for first degree murder on all theories and on all lesser homicides which may be included under any theory and supported by the evidence.

A defendant may always show by the evidence not only his innocence under the theory of prosecution chosen by the State but also his possible guilt of some lesser offense. If this lesser offense is included in the crime charged in the indictment and if there is evidence to support it, the defendant is entitled to have it submitted to the jury. These different theories of defense cannot be abrogated by the State's decision to prosecute nor the trial court's decision to submit the case on only one prosecutorial theory when under the indictment and the evidence adduced another is more favorable to the defendant. To hold otherwise would raise

serious constitutional questions under at least the Due Process Clause in the federal document and its counterpart in our state constitution.

## B.

[2]	The next question is whether there is here evidence to support a conviction for involuntary manslaughter. Under North Carolina and federal law a lesser included offense instruction is required if the evidence "would permit a jury rationally to find [defendant] guilty of the lesser offense and acquit him of the greater." *Strickland*, 307 N.C. at 286, 298 S.E.2d at 654, quoting *Beck v. Alabama*, 447 U.S. 625, 635, 65 L. Ed. 2d 392, 401 (1980). The test is whether there "is the presence, or absence, of any evidence in the record which might convince a rational trier of fact to convict the defendant of a less grievous offense." *State v. Wright*, 304 N.C. 349, 351, 283 S.E.2d 502, 503 (1981). Where the State's evidence is positive as to each element of the offense charged and there is no contradictory evidence relating to any element, no instruction on a lesser included offense is required. *State v. Peacock*, 313 N.C. 554, 330 S.E.2d 190 (1985).

> It is well settled that "a defendant is entitled to have all lesser degrees of offenses supported by the evidence submitted to the jury as possible alternative verdicts." *State v. Palmer*, 293 N.C. 633, 643-44, 239 S.E.2d 406, 413 (1977). On the other hand, the trial court need not submit lesser included degrees of a crime to the jury "when the State's evidence is positive as to each and every element of the crime charged *and there is no conflicting evidence relating to any element of the charged crime."*

*State v. Drumgold*, 297 N.C. 267, 271, 254 S.E.2d 531, 533 (1979), quoting *State v. Harvey*, 281 N.C. 1, 13-14, 187 S.E.2d 706, 714 (1972) (emphasis in original). Such conflicts may arise from evidence introduced by the State, *State v. Hicks*, 241 N.C. 156, 84 S.E.2d 545 (1954), or the defendant. They may arise when only the State has introduced evidence. *Peacock*, 313 N.C. 554, 330 S.E.2d 190; *Williams*, 284 N.C. 67, 199 S.E.2d 409.

The prosecution here for first degree murder rests upon the principle of acting in concert and the felony murder rule. The prosecution's theory is that defendant acted in concert with Jackie Brewer in the commission of the underlying felony of discharging

a firearm into an occupied structure during the course of which
the homicide occurred. Under the doctrine of acting in concert
when two or more persons act together in pursuance of a common
plan or purpose, each is guilty of any crime committed by any
other in pursuance of the common plan or purpose. *State v. Barts*,
316 N.C. 666, 343 S.E.2d 828 (1986). Under the felony murder rule
a homicide committed in the perpetration of one of the statutorily
specified felonies is first degree murder. N.C.G.S. § 14-7. Discharg-
ing a firearm into an occupied structure is a felony which will
support a first degree felony murder prosecution. *State v. King*,
316 N.C. 78, 340 S.E.2d 71 (1986); *State v. Wall*, 304 N.C. 609,
286 S.E.2d 68 (1982); *Williams*, 284 N.C. 67, 199 S.E.2d 409. Thus,
when persons act in concert to commit the felony of discharging
a firearm into an occupied structure each person is guilty not
only of that felony but for any homicide committed in its perpetra-
tion. "[W]hen two people act in concert to commit a robbery, each
person is responsible not only for that crime, but for a murder
committed during the course of the robbery." *State v. Reese*, 319
N.C. 110, 141, 353 S.E.2d 352, 370 (1987).

In order to convict defendant here of first degree felony murder
the State was required to offer evidence that, among other things,
defendant did act in concert with Brewer when he committed the
underlying felony of discharging a firearm into the Calhoun residence.
If there is conflicting evidence on this aspect of the case, *i.e.*,
evidence that defendant did not act in concert with Brewer and,
therefore, did not commit the underlying felony, then defendant
is entitled to an instruction on whatever degree of homicide less
than first degree murder the evidence supports. *Williams*, 284 N.C.
67, 199 S.E.2d 409.

Defendant contends there is conflicting evidence on whether
she acted in concert with Brewer in committing the underlying
felony of discharging a firearm into the Calhoun residence. She
argues the evidence conflicts as to whether she then acted together
with Brewer pursuant to a plan joined in by both. She says, further,
there is evidence tending to show she committed involuntary
manslaughter.

The State disagrees, arguing that the only material evidentiary
conflict is whether defendant and Brewer were in the vicinity of
the Calhoun residence at the time the fatal shot was fired and
whether Brewer fired this shot. The State says its evidence shows

without contradiction that Brewer at defendant's urging fired the fatal shot into the Calhoun residence. The State characterizes defendant's evidence as tending to show only that she and Brewer were in another part of Forsyth County at the time Ms. Calhoun was shot and that Brewer, consequently, did not fire this shot. Under the State's view the evidence was such that the jury could either accept the State's version and find defendant guilty as charged, or accept defendant's version and acquit her; there is no evidentiary middle ground. Thus, the State says the case falls within the principle, well established in our cases, that when the State's evidence establishes without contradiction the offense charged and defendant's evidence shows only alibi, there is no evidence to support submission of lesser included offenses and a defendant should be either found guilty as charged or acquitted. *State v. Allen*, 297 N.C. 429, 255 S.E.2d 362 (1979); *Drumgold*, 297 N.C. 267, 254 S.E.2d 531.

As the evidence discussed below will show, while the prosecution offered evidence that defendant acted in concert with Brewer when he fired into the Calhoun residence, largely through the testimony of Donald Stout, who said defendant instructed Brewer to shoot at the lights burning in the Calhoun home, other evidence introduced by the State conflicted with this testimony. Defendant's evidence that she did not act in concert with Brewer is, for the most part, with reference to her testimony that the shooting was going on in the Kernersville area of Forsyth County. This is the basis for the State's contention that her evidence supports alibi and nothing more. Defendant did, however, introduce some evidence that she did not always know where she was on the night of 17 March, and that she could have been in the Rural Hall area when Brewer was firing his gun under circumstances not amounting to their acting in concert.

Regarding the State's evidence, it elicited the following testimony from Shirley Cummings during its case in rebuttal:

And then [defendant] proceeded to tell me that she was with a man on Tuesday night. They were riding down a road. The man pulled a gun and shot out of her window. She said she had no idea this man had a gun. She said that she pulled the car to the side of the road. She got a butcher knife out of her glove compartment, put the butcher knife to his throat and told him never to pull a gun or fire a gun around her

children again; and she took him and dropped him off somewhere, but she didn't say where.

This testimony contradicts the evidence that defendant shared a common purpose or plan with Brewer to fire into the Calhoun residence and tends to show she did not act in concert with him when this shot was fired.

In its case in chief, the State introduced testimony of Detective Warren. He testified that during his investigation defendant agreed to ride with him and an SBI agent to Rural Hall, where defendant identified houses into which Brewer discharged his firearm. While in the area, Detective Warren asked defendant,

if she remembered them sitting on the bridge, the gun going off, Jack saying "Go. Go. Go," her driving off and entering a sharp curve, a house, a gunshot, a short distance, another gunshot, then going a short distance and a car being broken down on the roadway. That was the sequence of events I gave her . . . . She replied that this sequence of events sounded real familiar and that she remembered leaving the bridge after the gun being fired and going around a sharp curve where her tires squealed and then more shots started.

Detective Warren's other testimony made it clear that the Calhoun residence was the one fired into immediately after defendant drove her car around the sharp curve. Defendant's statements while in Rural Hall during the investigation as recounted by Detective Warren again contradict other evidence suggesting that defendant acted in concert with Brewer by instructing him to "shoot at the lights" as she drove past the Calhoun residence. Detective Warren's testimony tends to show instead that defendant was simply accelerating her vehicle rapidly past the Calhoun residence when Brewer fired into the home.

As to defendant's evidence, the bulk of it tends to show she was not in Rural Hall when Brewer fired his gun from her car window. Defendant did, however, introduce a taped 24 March 1987 conversation between defendant and Detective Mason of the Forsyth County Sheriff's Department. In this conversation Detective Mason asked, "Okay, where was the first time [Brewer] shot now?" Defendant responded, "I call it a back road . . . . It's, it's like [Route] 150, but it wasn't 150. Those are back roads to me." She went on to say, "I don't know where I was at. I don't know what

road it was. It could of been Kernersville, it could of been Winston, it could of been High Point, it could of been anywhere. I don't know . . . . I really don't know." Later Detective Mason asked defendant: "So, in other words, you could have definitely been up there and not known you was up there?" In context "up there" clearly refers to the Rural Hall area. Defendant replied, "Right, but, I, to be very honest with you, I doubt very seriously that I was . . . ." Detective Mason later asked about defendant's knowledge of Brewer's targets when he was shooting: "In other words, when you were driving, you don't actually know what [Brewer] was shooting at do you?" Defendant responded: "No."

Both the State and defendant, then, introduced evidence conflicting with the evidence that defendant shared a common purpose or plan with Brewer that he fire his weapon into the Calhoun residence. Defendant's evidence itself largely, but not exclusively, supports an alibi defense. When all the evidence is considered it may be characterized, from defendant's vantage point, as supporting both an alibi and a refutation of evidence that she and Brewer, wherever they were, were acting in concert.

There was, moreover, evidence that defendant's actions amounted to culpable negligence of the sort that would support a conviction of involuntary manslaughter. Involuntary manslaughter is an unlawful killing proximately caused by either (1) an unlawful act not amounting to a felony nor naturally dangerous to human life, or (2) a culpably negligent act or omission. *Greene*, 314 N.C. at 651-52, 336 S.E.2d at 89. Culpable negligence is defined as an act or omission evidencing a disregard for human rights and safety. *State v. Wilkerson*, 295 N.C. 559, 247 S.E.2d 905 (1978).

All the evidence shows that defendant was present when Brewer shot his gun several times from defendant's car window. Don Stout testified that Brewer fired his gun ten or fifteen times. Detective Warren's testimony suggests defendant, after Brewer fired his gun off an overpass, drove rapidly while Brewer fired into several residences, including the Calhoun residence. Defendant told Detective Mason that Brewer fired five times during this first series of shootings, when she did not know where she was and acknowledged she could have been in Rural Hall. She also stated Brewer fired a second series of shots elsewhere. Jonathan Martin's mother testified that the boy told her Brewer fired only at road signs, and that he later pointed out "numerous" signs he remembered from the night of 17 March.

STATE v. THOMAS

[325 N.C. 583 (1989)]

The jury could reasonably have found from the foregoing evidence that defendant's continuing to drive while Brewer repeatedly discharged his gun amounts to a disregard for the rights and safety of others that proximately caused the victim's death. It could, therefore, based on this evidence, have reasonably found her guilty of involuntary manslaughter had that alternative verdict been submitted to it.

The United States Supreme Court has expounded on the importance of permitting the jury to find a defendant guilty of a lesser included offense supported by the evidence by noting that the doctrine aids both the prosecution and the defense. *Beck v. Alabama,* 447 U.S. 625, 65 L. Ed. 2d 392. It aids the prosecution when its proof may not be persuasive on some element of the greater offense, and it is beneficial to the defendant "because it affords the jury a less drastic alternative than the choice between conviction of the offense charged and acquittal." *Id.* at 633, 65 L. Ed. 2d at 400. The Supreme Court has also expressed concern that in a case in which "one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of *some* offense, the jury is likely to resolve its doubts in favor of conviction" despite the existing doubt, because "the jury was presented with only two options: convicting the defendant . . . or acquitting him outright." *Keeble v. United States,* 412 U.S. 205, 212-13, 36 L. Ed. 2d 844, 850 (1973) (emphasis in original).

We share this concern in this case. While some reasonable doubt could have existed regarding whether defendant acted in concert with Brewer when he fired at the Calhoun residence, given the conflicting evidence on this aspect of the case, almost all the evidence points to some criminal culpability on defendant's part. It was important, therefore, that the jury be permitted to consider whether defendant was guilty of the lesser included offense of involuntary manslaughter and not be forced to choose between guilty as charged or not guilty.

We conclude, for the reasons given, that the trial court's failure to instruct the jury on the lesser included offense of involuntary manslaughter is reversible error. The verdict and judgment below are, therefore, vacated and defendant is given a

New trial.

STATE v. THOMAS

[325 N.C. 583 (1989)]

Justice MITCHELL dissenting.

The majority bases its holding that the defendant must be awarded a new trial upon its conclusion that the trial court erred by failing to instruct the jury to consider a possible verdict finding her guilty of involuntary manslaughter. I disagree and, therefore, I dissent.

The bill of indictment charging the defendant with murder was in the form prescribed by N.C.G.S. § 15-144. An indictment in such form will support a verdict finding the defendant guilty of first-degree murder, upon any of the theories set forth in N.C.G.S. § 14-17, or guilty of any lesser offense included within any of those theories. *State v. Bush*, 289 N.C. 159, 221 S.E.2d 333, *death sentence vacated*, 429 U.S. 809, 50 L. Ed. 2d 69 (1976). The State is not required at any time to elect a theory upon which it will proceed against the defendant on the charge of first-degree murder, and it is proper for the trial court to submit the issue of the defendant's guilt to the jury on all of the theories of first-degree murder supported by substantial evidence presented at trial. *State v. Strickland*, 307 N.C. 274, 292, 298 S.E.2d 645, 657 (1983), modified on other grounds by *State v. Johnson*, 317 N.C. 193, 344 S.E.2d 775 (1986). In the present case, however, the trial court submitted the murder charge for the jury's consideration *only* upon the theory of first-degree murder under the felony murder rule. Both the trial court's instructions to the jury and the written verdict form required that the jury find the defendant guilty of first-degree murder under the felony murder theory or find her not guilty. The jury returned its verdict specifying that it found the defendant guilty of first-degree murder under the felony murder rule.

By limiting the jury to returning a verdict on the first-degree murder charge only under the felony murder theory, the trial court withdrew the other theories of first-degree murder *and* all lesser homicide offenses included within *those* theories from the jury's consideration. Submission of the first-degree murder charge to the jury *only* upon the felony murder theory was the equivalent of a verdict finding her not guilty on the other theories of first-degree murder supported by the indictment upon which she had been placed in jeopardy, including the theory of premeditated and deliberate first-degree murder. *See State v. Adams*, 266 N.C. 406, 146 S.E.2d 505 (1966); *State v. Cobb*, 250 N.C. 234, 108 S.E.2d 237 (1959); *State v. Mundy*, 243 N.C. 149, 90 S.E.2d 312 (1955);

IN THE SUPREME COURT 601

*State v. Love*, 236 N.C. 344, 72 S.E.2d 737 (1952). Additionally, it was tantamount to a verdict finding her not guilty of all lesser homicide offenses included under the theory of premeditated and deliberate first-degree murder. *See State v. Beach*, 283 N.C. 261, 270, 196 S.E.2d 214, 220 (1973), overruled in part on other grounds by *State v. Adcock*, 310 N.C. 1, 310 S.E.2d 587 (1984). This Court has indicated that second-degree murder, voluntary manslaughter and involuntary manslaughter are lesser offenses included within first-degree murder *when* it is based upon the theory that the murder was premeditated and deliberate. *State v. Greene*, 314 N.C. 649, 336 S.E.2d 87 (1985). Therefore, submission of the first-degree murder charge against the defendant to the jury only upon the felony murder theory had the effect of acquitting her of premeditated and deliberate first-degree murder and its lesser included offenses of second-degree murder, voluntary manslaughter and involuntary manslaughter. The defendant could not thereafter be placed in jeopardy for any of those lesser offenses — offenses for which she had already been acquitted. Therefore, the trial court properly refused to instruct the jury with regard to involuntary manslaughter.

We have, it is true, made statements in prior cases that when the law and evidence justify the application of the felony murder rule, the State is not required to prove premeditation and deliberation and the trial court is not required to submit second-degree murder or manslaughter to the jury *unless* there is evidence to support such lesser offenses. *E.g., State v. Strickland*, 307 N.C. at 292, 298 S.E.2d at 657; *State v. Wall*, 304 N.C. 609, 613, 286 S.E.2d 68, 71 (1982); *State v. Rinck*, 303 N.C. 551, 565, 280 S.E.2d 912, 923 (1981); *State v. Swift*, 290 N.C. 383, 407, 226 S.E.2d 652, 669 (1976); *State v. Miller*, 219 N.C. 514, 519, 14 S.E.2d 522, 525 (1941); *State v. Donnell*, 202 N.C. 782, 785, 164 S.E. 352, 353 (1932). I believe, however, that such statements originally were intended to apply only to situations in which first-degree murder is submitted to the jury upon, and the trial court instructs the jury upon, *both* the theory of first-degree murder under the felony murder rule *and* the theory of premeditated and deliberate first-degree murder.

Cases such as *State v. Newsome*, 195 N.C. 552, 143 S.E. 187 (1928); *State v. Logan*, 161 N.C. 235, 76 S.E. 1 (1911); and *State v. Spivey*, 151 N.C. 676, 65 S.E. 995 (1909), form the genesis of our statements that the jury in felony murder cases should not

STATE v. THOMAS

[325 N.C. 583 (1989)]

be instructed on lesser homicide offenses *unless* there is evidence to support them. Each of those early cases, however, were cases in which the first-degree murder charge was submitted to and considered by the jury upon *both* the theory of felony murder and the theory of premeditated and deliberate murder. In each of those cases, submission of lesser homicide offenses included within a charge of *premeditated and deliberate* first-degree murder clearly would have been proper if supported by evidence. The statements in *Newsome, Logan* and *Spivey* were correct in the context of the cases in which they were made. I do not believe, however, that the Court intended to imply that first-degree murder based upon the felony murder theory included any lesser homicide offenses. Nor do I construe our reliance upon statements from those early cases in our more recent decisions such as *Strickland, Wall, Rinck, Swift, Miller* and *Donnell* as intended to support the proposition that first-degree murder based upon the felony murder theory includes any lesser homicide offense.

Not until the case of *State v. Williams*, 284 N.C. 67, 199 S.E.2d 409 (1973), did the statements from our early cases lead—and in my view mislead—this Court into holding that a trial court had erred by failing to instruct on lesser homicide offenses where the first-degree murder charge against a defendant had been submitted to the jury solely upon the theory of felony murder. There, the Court concluded, in essence, that if the jury believed evidence tending to show that the killing did not occur during the commission of a felony, the defendant "would not be guilty of more than murder in the second degree in the absence of proof that *the killing* was intentional and with premeditation and deliberation." *Id.* at 75, 199 S.E.2d at 414. I agree with the conclusion of the Court in *Williams* that the *evidence* there could have supported a conviction for a lesser homicide offense included within first-degree murder *on the theory of premeditation and deliberation.* I believe the Court went astray, however, in holding that the trial court had erred by failing to instruct on such lesser offenses in that case in which the greater offense of first-degree murder was not submitted upon the theory that the murder was premeditated and deliberate and that theory was not before the jury. I believe that, to the extent that it indicated that a charge of first-degree murder based upon the felony murder theory includes lesser homicide offenses, *Williams* was not supported by reason or authority and was wrongly decided. Even if *Williams* was correctly decided on the point at issue, however, it has been effectively overruled by more recent cases.

In *State v. Weaver*, 306 N.C. 629, 295 S.E.2d 375 (1982), this Court adopted a definitional basis as opposed to a factual or evidentiary basis for determining whether one crime is a lesser included offense of another. In *Weaver* we clearly established that:

> We do not agree with the proposition that the *facts* of a particular case should determine whether one crime is a lesser included offense of another. Rather, the *definitions* accorded the crimes determine whether one offense is a lesser included offense of another crime. *State v. Banks*, 295 N.C. 399, 415-16, 245 S.E.2d 743, 754 (1978). In other words, all of the essential elements of the lesser crime must also be essential elements included in the greater crime. If the lesser crime has an essential element which is not completely covered by the greater crime, it is not a lesser included offense. The determination is made on a *definitional*, not a factual basis.

*Id.* at 635, 295 S.E.2d at 378-79. "Since *Weaver* it has been the rule that the determination of whether one offense is a lesser included of another must be based on a strict analysis of the elements of the two offenses." *State v. Wortham*, 318 N.C. 669, 671, 351 S.E.2d 294, 296 (1987).

When the *definitional* test of *Weaver* is applied — as opposed to the evidentiary or *factual test* apparently applied in *Williams* — it is readily apparent that neither second-degree murder, voluntary manslaughter nor involuntary manslaughter can be lesser included offenses of first-degree murder when, as here, first-degree murder is submitted solely upon the theory of felony murder. First-degree murder based upon the felony murder rule has only two elements: (1) the defendant knowingly committed or attempted to commit one of the felonies indicated in N.C.G.S. § 14-7, and (2) a related killing. N.C.G.S. § 14-17 (1986). *See State v. Reese*, 319 N.C. 110, 145, 353 S.E.2d 352, 372 (1987); *State v. Avery*, 315 N.C. 1, 337 S.E.2d 786 (1985). Whether the defendant committed the killing himself, intended that the killing take place, or even knew that a killing might occur is irrelevant. *State v. Reese*, 319 N.C. at 145, 353 S.E.2d at 372. More specifically, a killing during the commission or attempt to commit one of the felonies indicated in the statute is murder in the first degree without regard to premeditation, deliberation or *malice. State v. Wall*, 304 N.C. 609, 286 S.E.2d 68. Second-degree murder, on the other hand, is defined as an unlawful killing of a human being *with malice* but without premedita-

tion and deliberation. *State v. Greene*, 314 N.C. 649, 651, 336 S.E.2d 87, 88 (quoting *State v. Wrenn*, 279 N.C. 676, 681-82, 185 S.E.2d 129, 132 (1971)). The element of malice which is a part of the lesser offense of second-degree murder *is* an element of the greater offense of first-degree murder, *when* first-degree murder is based upon the theory of premeditation and deliberation. For this reason, we have concluded in cases such as *Greene* that second-degree murder is a lesser included offense of *premeditated and deliberate* first-degree murder. *Id.* Malice *is not* an element of the greater offense of first-degree murder, however, *when* the greater offense of first-degree murder is based solely upon the felony murder theory. Under the definitional test of *Weaver*, second-degree murder has an essential element — malice — which is not an element of first-degree murder under the felony murder theory. Therefore, second-degree murder cannot be a lesser included offense of first-degree murder, *when*, as here, first-degree murder is submitted to the jury based solely upon the felony murder theory. *State v. Weaver*, 306 N.C. 629, 295 S.E.2d 375. *See State v. Davis*, 305 N.C. 400, 290 S.E.2d 574 (1982) (holding that no separate offense of felony murder in the second degree is recognized in this jurisdiction).

Further, second-degree murder, voluntary manslaughter and involuntary manslaughter all include another element which is not a part of first-degree murder, *when* first-degree murder is based solely upon the felony murder theory. The offenses of second-degree murder, voluntary manslaughter and involuntary manslaughter each include as a necessary element that the defendant commit an *intentional act* which act *proximately* causes the death of the victim. *State v. Johnson*, 317 N.C. 193, 344 S.E.2d 775 (1986) (involuntary manslaughter); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983) (involuntary manslaughter); *State v. Rogers*, 299 N.C. 597, 264 S.E.2d 89 (1980) (voluntary manslaughter); *State v. Simpson*, 244 N.C. 325, 93 S.E.2d 425 (1956) (second-degree murder); *State v. Ellison*, 226 N.C. 628, 39 S.E.2d 824 (1946) (second-degree murder); *State v. Redman*, 217 N.C. 483, 8 S.E.2d 623 (1940) (second-degree murder); *State v. Holsclaw*, 42 N.C. App. 696, 257 S.E.2d 650, *review denied and appeal dismissed*, 298 N.C. 571, 261 S.E.2d 126 (1979) (second-degree murder and manslaughter). *When* the greater offense of first-degree murder is based solely upon the felony murder theory — as opposed to the theory of premeditation and deliberation — it does not include any element requiring that the act proximately causing the victim's death be a voluntary act by the defendant

or be his act at all. It is true, of course, that to establish first-degree murder under the felony murder rule there can be no break in the chain of events leading from the initial felony to the act causing death, and that the homicide must be part of a series of acts forming one continuous transaction. *State v. Fields*, 315 N.C. 191, 197, 337 S.E.2d 518, 522 (1985) (quoting *State v. Hutchins*, 303 N.C. 321, 345, 279 S.E.2d 788, 803 (1981)). First-degree murder under the felony murder theory, however, does not include the element — an essential element for all lesser homicide offenses — that *the act proximately causing death* be intentional. The underlying felony or attempt to commit a felony supporting the application of the felony murder rule must be intentional, but it is not necessary that the underlying felony or attempt be the act proximately causing death, or that the act actually causing death be itself an intentional act, in order that a killing be first-degree murder under the felony murder rule. *See State v. Avery*, 315 N.C. 1, 337 S.E.2d 786; *State v. Fields*, 315 N.C. 191, 337 S.E.2d 518; *State v. Hutchins*, 303 N.C. 321, 279 S.E.2d 788; *State v. Wooten*, 295 N.C. 378, 245 S.E.2d 699 (1978); *State v. Squire*, 292 N.C. 494, 234 S.E.2d 563, *cert. denied*, 434 U.S. 998, 54 L. Ed. 2d 493 (1977); *State v. Covington*, 290 N.C. 313, 226 S.E.2d 629 (1976); *State v. Shrader*, 290 N.C. 253, 225 S.E.2d 522 (1976); *State v. Bush*, 289 N.C. 159, 221 S.E.2d 333, *death sentence vacated*, 429 U.S. 809, 50 L. Ed. 2d 69; *State v. Thompson*, 280 N.C. 202, 185 S.E.2d 666 (1972). The act proximately causing death may be entirely unintentional or someone else's act in cases of first-degree murder under the felony murder rule, so long as the underlying felony or attempt to commit a felony was intentional. Therefore, the lesser offenses of second-degree murder, voluntary manslaughter and involuntary manslaughter all include as an essential element that the act proximately causing death be the defendant's intentional act, an element not included in the greater offense of first-degree murder under the felony murder theory. Accordingly, no lesser homicide offense may be considered a lesser *included* offense of first-degree murder under the felony murder theory, if the definitional test of *Weaver* is properly applied.

I do not mean to be understood as saying that the trial court could not in any event have instructed the jury on involuntary manslaughter in this case. Assuming *arguendo* that the evidence here would have supported a finding of involuntary manslaughter, the jury could have been permitted to consider that lesser offense,

STATE v. THOMAS

[325 N.C. 583 (1989)]

*but only* as a lesser homicide offense included within the offense of premeditated and deliberate first-degree murder. The trial court, having elected for whatever reason not to submit premeditated and deliberate first-degree murder or any of its lesser included homicide offenses for the jury's consideration after the defendant had been placed in jeopardy, in effect acquitted her of all of those offenses. She could not thereafter be convicted of any lesser homicide offenses unless they are by definition lesser offenses included within the offense of first-degree murder based upon the felony murder theory, which I believe I have shown they are not. Therefore, I conclude that the trial court did not err in refusing to instruct the jury to consider finding the defendant guilty of involuntary manslaughter as a lesser offense included within first-degree murder based upon the felony murder theory.

Finally, I believe the majority has set a trap for itself. As I have pointed out in this dissent, it is my view that the bill of indictment in this case charged the defendant with the lesser offenses of second-degree murder, voluntary manslaughter and involuntary manslaughter, but only because those lesser offenses were included within first-degree murder based upon the theory of premeditation and deliberation supported by the indictment. As I have also indicated, she has, in effect, been acquitted of premeditated and deliberate first-degree murder and all lesser homicide offenses *included under that theory*. I do not think she can again be placed in jeopardy and made subject to conviction for one of those lesser homicide offenses for which she has been acquitted. I leave such questions for the majority to resolve should the defendant be tried and convicted and those questions raised before this Court at a later time.

For the foregoing reasons, I dissent.

Justice WEBB joins in this dissenting opinion.